**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION**

| | | |
|---|---|---|
| RICHARD WATKINS, | ) | CASE NO. 2:14-cv-135 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRANS UNION, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT AND JURY DEMAND

Plaintiff, Richard Watkins, by counsel, against Trans Union, LLC states the following allegations and claims for relief:

## PARTIES

1. Plaintiff, Richard Watkins, resides in Owen County, Indiana.

2. Plaintiff is a consumer as defined by Section 1681a(c) of the Fair Credit Reporting Act, 15 U.S.C. 1681, *et seq*. (the "**FCRA**").[1]

3. Trans Union, LLC ("**Trans Union**") is a consumer reporting agency as defined by Section 1681a(f) and is a ""consumer reporting agency that compiles and maintains files on consumers on a nationwide basis'' as defined by §1681a(p).

---

[1] Unless otherwise specified all "**Section**" references are to the FCRA.

4. Trans Union regularly engages in the business of assembling, evaluating, and dispersing information concerning the credit histories of consumers for the purpose of furnishing consumer reports, as defined by Section 1681a(d) of the FCRA, to third parties. Trans Union provides such consumer credit reports to third party subscribers for monetary compensation.

## JURISDICTION

5. This lawsuit being brought pursuant to the FCRA presents a federal question and as such, jurisdiction arises under 28 U.S.C 1331 and 15 U.S.C 1681, *et seq.*

6. Venue is proper within this district and division pursuant to 15 U.S.C. 1681p and 28 U.S.C. 1391(b).

## FACTUAL ALLEGATIONS

### Summary of the Fair Credit Reporting Act

7. The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

8. The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce

for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information...." 15 U.S.C. 1681(b).

9. The FCRA further requires that when preparing consumer reports a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. 1681e(b).

## Processing of Credit Information

10. Trans Union regularly receives information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors and others.

11. These sources are known as **"furnishers"** within the credit reporting industry and under the FCRA.

12. Trans Union collects information from thousands of furnishers.

13. The process by which Trans Union receives, sorts, and stores information is largely electronic.

14. Furnishers report credit information to Trans Union through the use of coded tapes that are transmitted to Trans Union on a monthly basis through software known as Metro 2.

15. Trans Union takes the credit information reported by furnishers and creates consumer credit files.

16. Trans Union maintains credit files on more than 200 million consumers.

17. Credit files are updated electronically by the furnishers to reflect new information regarding the reported accounts (sometimes referred to as "tradelines" within the industry).

18. Trans Union knows that different consumers can have similar names.

19. Trans Union knows that different consumers can have similar social security numbers.

20. Trans Union knows that different consumers with similar names can also have similar social security numbers.

21. Trans Union matches tradelines to a consumer credit file by comparing the information about the consumer associated with the tradeline to the information Trans Union maintains about the consumer in the consumer's credit file or files.

22. Trans Union accomplishes this matching of credit information to consumer credit files through the use of certain matching algorithms or database rules.

23. Sometimes Trans Union's matching algorithms match information belonging to one consumer to the credit file of another consumer;

resulting in what is commonly known in the industry as a mixed or merged credit file.

24. A mixed or merged credit file is the result of Trans Union inaccurately merging of credit information and/or an entire credit file belonging to one consumer into the credit file of another consumer.

25. There are many different possible causes for the merging of credit files but all of them relate in one way or another to the algorithms (the database rules) used by Trans Union to match credit information, including bankruptcy filing information, to a particular consumer's credit file.

26. The success or failure of these algorithms or rules is both a function of the rules themselves and of the information provided by the furnishers of the tradeline information to Trans Union.

27. A mixed consumer report could be caused by an improper algorithm just as it could be caused by the inaccurate reporting of a consumer's personal or "indicative" information (e.g., name, social security number, address, date of birth, etc.) by the furnishers to Trans Union.

28. These rules also determine which credit files are merged to create a complete consumer report.

29. Therefore, a mixed consumer report is sometimes the result of the mixing of two or more consumer credit files belonging to different consumers into one consumer report.

### Plaintiff's Credit File and Consumer Reports

30. Trans Union maintains at least one credit file for Plaintiff.

31. In 2009, Plaintiff applied for a loan and discovered that his Trans Union credit file contained more than twenty (20) collection tradelines (the "**Collections**") that did not belong to him.

32. Plaintiff disputed the accuracy of the Collections with Trans Union.

33. After making those disputes, Plaintiff believed the Collections had been removed from his file.

34. In 2012, Plaintiff obtained a copy of his Trans Union credit file and discovered that the Collections were again in his credit file.

35. Plaintiff again disputed the accuracy of the Collections with Trans Union.

36. After making those disputes, Plaintiff again concluded that the Collections had been removed from his file.

37. In 2013, Plaintiff applied for a mortgage loan with Chase Bank. During the process of applying for this loan, Plaintiff learned that the Collections were again in his Trans Union credit file.

38. Plaintiff again disputed the accuracy of the Collections with Trans Union.

39. Plaintiff's Trans Union credit file has included inaccurate personal or indicative information.

40. Plaintiff's Trans Union credit file has included the Collections.

41. At least one of Plaintiff's Trans Union credit files included, at various points in time the Collections.

42. Plaintiff disputed the Collections with Trans Union and requested that Trans Union conduct reinvestigations into the accuracy of the Collections.

43. Trans Union received Plaintiff's requests for reinvestigation.

44. Plaintiff's credit file has been merged by Trans Union with the credit file of another consumer or that Trans Union has inaccurately mixed the Collections with Plaintiff's credit file.

45. Trans Union's merging and matching algorithms have caused Plaintiff's credit file to be mixed with credit information and/or credit files belonging to someone other than Plaintiff.

46. Within the two years previous to the filing of this Complaint, Trans Union prepared and distributed one or more consumer reports, as the term is defined by Section 1681a(d), pertaining to Plaintiff that

contained misleading or inaccurate information, including the Collections.

47. In response to Plaintiff's requests for reinvestigation, Trans Union failed and/or refused to delete all of the Collections from Plaintiff's credit file.

48. Trans Union failed to conduct a reinvestigation of the Collections or failed to conduct a reinvestigation of the Collections which complies with the FCRA.

49. Trans Union deleted and then reinserted the Collections into Plaintiff's credit file at various points in time.

50. Trans Union failed to maintain reasonable procedures to prevent Plaintiff's credit information and/or credit file from being mixed with the credit information and/or credit file of another consumer.

51. Trans Union knows that its database mixes credit information and credit files that should not be mixed.

52. Trans Union defended and ultimately resolved an enforcement action brought by the Texas attorney general regarding this mixed or merged file problem.

53. As a result of that lawsuit, Trans Union agreed to a consent order.

54. In that consent order, Trans Union agreed to implement or continue to utilize reasonable procedures to avoid the occurrence or reoccurrence of mixed files.

55. Trans Union has been sued by consumers and suffered judgments as a result of mixing consumer credit information and/or credit files.

56. When Trans Union assembles consumer reports for its subscribers, it allows these subscribers to use only a partial list of personal identifies to match data to the target consumer resulting in the inclusion of a broad range of credit information; information which may in some cases belong to another consumer.

57. However, when consumers, like Plaintiff, request copies of their credit files, Trans Union requires a complete match of all personal identifiers, resulting in a narrower match of data for the consumer.

58. Consequently, Trans Union's own procedures for disclosing information to consumers (as they are required to do by the FCRA) tends to mask or conceal the problem of mixed files.

59. By concealing this information, Trans Union impairs the ability of consumers, like Plaintiff, to identify and dispute errors resulting from mixed credit information or credit files.

60. Trans Union has failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit file and of his consumer reports.

61. Trans Union's failures to follow reasonable procedures are willful.

62. Trans Union's failures to properly reinvestigate Plaintiff's requests for reinvestigation are willful.

## **CLAIMS FOR RELIEF**

63. Plaintiff disputed the Collections with Trans Union and requested that Trans Union conduct a reinvestigation into the accuracy of and correct that information pursuant to Section 1681i.

64. Plaintiff's requests for reinvestigation included sufficient information for Trans Union to provide actual notice that the information in dispute was inaccurate and that the sources of the disputed information were not reliable.

65. Even prior to Plaintiff's requests for reinvestigation, Trans Union maintained sufficient information about the Collections for Trans Union to itself conclude that these items of information should not be mixed with Plaintiff's credit file.

66. If Trans Union did conduct the reinvestigations requested by Plaintiff, Trans Union failed to transmit all the relevant information within its database and provided by Plaintiff to its furnishers.

67. If Trans Union did remove any of the Collections from Plaintiff's credit file when processing Plaintiff's requests for reinvestigation, Trans Union reinserted or remerged those Collections into Plaintiff's credit file without providing notice of these reinsertions to Plaintiff.

68. Trans Union has failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit file and Plaintiff's consumer reports.

69. Trans Union has failed to disclose the complete content of Plaintiff's credit file to Plaintiff.

70. Plaintiff has suffered damages, including the denial or inability to obtain credit and various forms of emotional distress, as a result of the actions and inaction of Trans Union.

71. Trans Union has negligently violated Section 1681e; alternatively Trans Union has willfully violated Section 1681e.

72. Trans Union has negligently violated Section 1681g; alternatively Trans Union has willfully violated Section 1681g.

73. Trans Union has negligently violated Section 1681i; alternatively Trans Union has willfully violated Section 1681i.

74. Plaintiff has suffered damages as a result of these violations for which Plaintiff is entitled to recover under Section 1681o or, alternatively, Section 1681n.

## JURY DEMAND

Plaintiff demands trial by jury.

## REQUEST FOR RELIEF

Plaintiff respectfully requests that the Court grant any and all of the following relief: (a) actual damages; (b) statutory damages in an amount to be determined at trial; (c) punitive damages in an amount to be determined at trial; (d) costs and attorney fees; and (e) any other relief the Court deems just and proper.

Respectfully submitted,

*s/ G. John Cento*
G. John Cento
Christopher T. Lane
CENTO LAW, LLC
334 North Senate Avenue
Indianapolis, Indiana 46204
(317) 908-0678
cento@centolaw.com
chrislane@centolaw.com

*Counsel for Richard Watkins*