1     IN THE UNITED STATES DISTRICT COURT
          FOR THE
2     SOUTHERN DISTRICT OF INDIANA

3

4 RICHARD WATKINS,    )
             )
5     Plaintiff, )
             )
6   -vs-      ) No. 2: 14-CV-35
             )
7 TRANS UNION, LLC,   )
             )
8     Defendant  )
 _____)

9

10    The videotaped deposition of DENISE NORGLE,
11 called by the Plaintiff for examination, pursuant to
12 Subpoena and pursuant to the Federal Rules of Civil
13 Procedure for the United States District Courts
14 pertaining to the taking of depositions, taken before
15 Tracy Kerney, Certified Shorthand Reporter, at 555 West
16 Adams Street, commencing at the hour of 1:02 p.m., on
17 the 11th day of February, A.D., 2015.

18

19

20

21

22

23

24

25

                 Page 1

| | |
|---|---|
| 1 A P P E A R A N C E S : | 1     THE VIDEOGRAPHER:  We are now on the record.   13:02 |
| 2  CENTO LAW LLC, By | 2 Please, note that the microphones are sensitive and may   13:02 |
|     MR. G. JOHN CENTO (telephonically) | 3 pick up whispering and private conversations.         13:02 |
| 3  334 North Senate Avenue | 4     Please, turn off all cell phones or place them  13:02 |
|     Indianapolis, IN 46204 | 5 away from the microphones as they can interfere with the  13:02 |

## Page 2

1 A P P E A R A N C E S :

2  CENTO LAW LLC, By
    MR. G. JOHN CENTO (telephonically)
3  334 North Senate Avenue
    Indianapolis, IN 46204
4  (765) 280-FCRA
    cento@centolaw.com
5
    On behalf of the Plaintiff;
6
  SCHUCKIT & ASSOCIATES, PC, By
7  MR. WILLIAM R. BROWN
    4545 Northwestern Drive
8  Zionsville, IN  46077
    (317) 363-2400
9  (317) 363-2257 (fax)
    wbrown@schuckitlaw.com
10
    On behalf of the Defendant.
11
  ALSO PRESENT:
12
  Michael Prager, videographer
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 2

## Page 3

1  I N D E X
2    WITNESSES
3  ALL WITNESSES:    PAGE:
4

DENISE NORGLE:

Examination by MR. CENTO
    5:8

EXHIBITS

NO EXHIBITS MARKED

(Line numbers 1–25 on left margin)

Page 3

## Page 4

1     THE VIDEOGRAPHER:  We are now on the record.   13:02
2 Please, note that the microphones are sensitive and may   13:02
3 pick up whispering and private conversations.         13:02
4     Please, turn off all cell phones or place them  13:02
5 away from the microphones as they can interfere with the  13:02
6 deposition audio.  Recording will continue until all     13:02
7 parties agree to go off the record.         13:02
8     My name is Michael Prager representing         13:02
9 Veritext Legal Solutions.  The date today is February     13:02
10 11, 2015, and the time is approximately 1:00 p.m.  This  13:02
11 deposition is being held at Trans Union located at     13:02
12 555 West Adams Street, Chicago, Illinois, 60661 and is   13:03
13 being taken by counsel for the plaintiff.         13:03
14    The caption of this case is Richard Watkins   13:03
15 versus Trans Union, LLC.  This case is being held in the  13:03
16 United States District Court for the Southern District   13:03
17 of Indiana, Case No. 14-CV-35.  The name of the witness  13:03
18 is Denise Norgle.         13:03
19    At this time, the attorneys present in the     13:03
20 room and everyone attending remotely will identify     13:03
21 themselves and the parties they represent.         13:03
22    MR. CENTO:  John Cento for the plaintiff.     13:03
23    MR. BROWN:  William Brown, counsel for Trans   13:03
24 Union.         13:03
25    THE VIDEOGRAPHER:  Our court reporter, Tracy   13:03

Page 4

## Page 5

1 Kerney, representing Veritext will swear in the witness  13:03
2 and we can proceed.         13:03
3    (Witness duly sworn.)  13:03
4    DENISE NORGLE,         13:03
5 called as a witness herein, having been first duly  13:03
6 sworn, was examined and testified as follows:         13:03
7    EXAMINATION         13:03
8 BY MR. CENTO:         13:03
9  Q.  What did you do to prepare for today's     13:03
10 deposition?         13:03
11  A.  I met with my counsel, Mr. Brown.         13:04
12  Q.  Did you have any other meeting besides the   13:04
13 meeting with Mr. Brown?         13:04
14  A.  No, I don't believe so.         13:04
15  Q.  Did you review any documents?         13:04
16  A.  Yes, I did.         13:04
17  Q.  What did you review?         13:04
18  A.  I reviewed the court's order, and I reviewed  13:04
19 affidavits I had previously executed in I think three   13:04
20 matters.         13:04
21  Q.  Childress?         13:04
22  A.  I believe that's right.         13:04
23  Q.  Hobson?         13:04
24  A.  Yes.         13:04
25  Q.  What was the third?         13:04

Page 5

**Page 6**

```
 1    A.  I believe it was this matter.          13:04
 2    Q.  Did you review any other documents?    13:04
 3    A.  No, I did not.                          13:04
 4    Q.  How long was your meeting with Mr. Brown?  13:05
 5    A.  I would estimate it was about two hours.   13:05
 6    Q.  As of the date of filing of Mr. Watkins'   13:05
 7 complaint, what members of Trans Union's legal staff  13:05
 8 will be involved in the defense of the claims brought by  13:05
 9 Mr. Watkins?                                  13:05
10    A.  I'm sorry.  I can't really hear the question.  13:05
11       THE VIDEOGRAPHER:  Let's turn up the speaker  13:05
12 phone a little bit maybe without completely   13:05
13 disconnecting him.  Here we go.               13:05
14       Okay.  I think it's at the maximum here, so  13:05
15 we'll if it's better.                         13:05
16 BY MR. CENTO:                                 13:05
17    Q.  All right.  As of the date of the filing of  13:05
18 Mr. Watkins' complaint, what's members of Trans Union's  13:05
19 legal staff will be involved in the defense of this  13:06
20 claim?                                        13:06
21    A.  I'm sorry.  As of -- are you asking as of the  13:06
22 date of filing or as of today going forward?  I don't  13:06
23 understand the question.                      13:06
24    Q.  The question was as of the date of filing.  13:06
25    A.  I don't know the exact date of filing, so I  13:06
```

**Page 7**

```
 1 don't know if I can answer that question.     13:06
 2    Q.  You said that in preparation for your   13:06
 3 deposition today, you reviewed the order that was given  13:06
 4 in this case that authorized this deposition, right?  13:06
 5    A.  Yes, I did.                            13:06
 6    Q.  Did you read the subjects which -- the topics  13:06
 7 which the Court authorized?                   13:06
 8    A.  Yes, I did.                            13:06
 9    Q.  Okay.  The first topic was, as of the date of  13:06
10 filing of Mr. Watkins' complaint, what members of Trans  13:06
11 Union's legal staff will be involved in the defense of  13:06
12 this claim?  Did you read that when you reviewed the  13:06
13 order?                                        13:06
14    A.  Yes, I did.                            13:06
15    Q.  Okay.  But you don't know the answer to it?  13:07
16    A.  I know the members of the Trans Union's legal  13:07
17 staff that are involved in the defense of this claim,  13:07
18 but I did not make note of the date of filing of the  13:07
19 claim, and I'm not sure exactly when this case was  13:07
20 filed.                                        13:07
21    Q.  As of today, which members of the legal staff  13:07
22 are involved?                                 13:07
23    A.  As of today, the members of the Trans Union's  13:07
24 legal staff involved in the defense of this case  13:07
25 are myself; Mr. John Blenke, that's B-L-E-N-K-E;  13:07
```

**Page 8**

```
 1 Mr. Dan Halvorsen, H-A-L-V-O-R-S-E-N; and Ms. Linda  13:07
 2 Dubnow, D-U-B-N-O-W.                          13:07
 3    Q.  What Trans Union employees are anticipated to  13:08
 4 have relevant information about Mr. Watkins' claim?  13:08
 5    A.  At this point, I would anticipate that the  13:08
 6 employees who would have information about this claim or  13:08
 7 will be involved in the defense of this claim would  13:08
 8 include associates from our Crumlin Consumer Relations  13:08
 9 Office.  That's C-R-U-M-L-I-N-N (sic) in Pennsylvania.  13:08
10 So most likely, Liz Wilson in that office as well as  13:08
11 possibly, Lynn Romanowski, R-O-M-A-N-O-W-S-K-I.  13:08
12    Q.  Anyone else?                          13:09
13    A.  Not that I can think of at the moment.  13:09
14    Q.  Will Eileen Little be involved?         13:09
15    A.  Eileen Little, no.                     13:09
16    Q.  Why won't she be involved?             13:09
17    A.  She passed away a couple of years ago.  13:09
18    Q.  Do you know when?                      13:09
19    A.  I don't.                              13:09
20    Q.  Will Bill Stockdale be involved?        13:09
21    A.  I don't know whether we've made a       13:09
22 determination whether Bill Stockdale will be involved in  13:09
23 this case.                                    13:09
24    Q.  What about Steve Rieger?               13:10
25    A.  I don't anticipate that Steve Rieger will be  13:10
```

**Page 9**

```
 1 involved in this particular case.             13:10
 2    Q.  Will the case involve any of the investigators  13:10
 3 who processed the plaintiff's disputes?       13:10
 4    A.  I don't know.                          13:10
 5    Q.  There would be some investigators, right, who  13:10
 6 processed the dispute?                        13:10
 7       MR. BROWN:  Object to form.             13:10
 8 BY MR. CENTO:                                 13:10
 9    Q.  Right?                                13:10
10    A.  I'm sorry.  Was there a question?       13:10
11    Q.  Yeah.                                 13:10
12       MR. BROWN:  Could the court reporter read that  13:10
13 back, please.                                 13:10
14       MR. CENTO:  That's okay.  I can ask it again.  13:10
15       MR. BROWN:  Okay.                       13:10
16 BY MR. CENTO:                                 13:10
17    Q.  My question was, again I'm asking about  13:11
18 employees of Trans Union that are anticipated to have  13:11
19 relevant investigation about Mr. Watkins' claim.  13:11
20 Wouldn't the Trans Union employees who actually  13:11
21 processed plaintiff's disputes to Trans Union have  13:11
22 relevant information about his -- about Mr. Watkins'  13:11
23 claim?                                        13:11
24    A.  So to the extent that Trans Union employees  13:11
25 processed his disputes going back to I think 2007, those  13:11
```

3 (Pages 6 - 9)

**Page 10**

1 records are captured in our Consumers Relations System.  13:11
2 I don't know that we would necessarily need to identify  13:11
3 the actual employees or whether they would be  13:11
4 participating in our defense of this case.  13:11
5     Q.  Well, I'm not asking you -- okay.  I'm not  13:11
6 asking if you might use them for your defense.  I'm  13:12
7 asking if they would have relevant information.  The  13:12
8 employees who processed assuming there was -- they were  13:12
9 employees of Trans Union who processed Mr. Watkins'  13:12
10 disputes would have relevant information about those  13:12
11 disputes.  13:12
12     MR. BROWN:  Object to form.  13:12
13     THE WITNESS:  Should I answer?  13:12
14     MR. BROWN:  If you can.  13:12
15     THE WITNESS:  I don't know that the  13:12
16 individuals who specifically processed Mr. Watkins'  13:12
17 disputes would remember processing his disputes.  That  13:12
18 is why we capture everything in our consumer relations  13:12
19 system and that's why -- what Ms. Wilson would likely  13:12
20 refer to if she is involved in our defense of this  13:12
21 matter.  13:12
22 BY MR. CENTO:  13:12
23     Q.  Well, plaintiff's counsel in these kinds of  13:12
24 cases will from time to time take the depositions of the  13:13
25 persons who had processed the disputes, right?  13:13

**Page 11**

1     MR. BROWN:  Object to form.  13:13
2     If you know what plaintiff's counsel does  13:13
3 generally.  13:13
4     THE WITNESS:  I think there are probably some  13:13
5 plaintiff counsels who would seek to take the deposition  13:13
6 of the individual operator who processed one of the  13:13
7 plaintiff's disputes.  13:13
8 BY MR. CENTO:  13:13
9     Q.  Has Trans Union provided to outside counsel  13:13
10 who handled the plaintiff claims in this case any  13:13
11 written instructions related to the manner in which  13:13
12 outside counsel should conduct litigation activities?  13:13
13     MR. BROWN:  Object to form and also object  13:14
14 that it's not the language that the Court used.  13:14
15     MR. CENTO:  Go ahead.  13:14
16     THE WITNESS:  So Trans Union's written -- I'm  13:14
17 sorry.  Can I have the question again, please.  13:14
18 BY MR. CENTO:  13:14
19     Q.  Sure.  13:14
20     Has Trans Union provided to outside counsel  13:14
21 who handles claims like the claims in this case any  13:14
22 written instructions related to the manner in which  13:14
23 outside counsel should conduct litigation activities?  13:14
24     A.  No.  I don't think we've given written  13:14
25 instruction as to the manner in which they should  13:14

**Page 12**

1 conduct litigation activity simply because we have such  13:14
2 a longstanding relationship with this counsel, that they  13:14
3 know how we want the litigation conducted.  13:14
4     Q.  And how do you want to conduct it?  13:15
5     MR. BROWN:  Object to form, attorney-client  13:15
6 privilege.  I'm going to instruct the witness not to  13:15
7 answer.  13:15
8 BY MR. CENTO:  13:15
9     Q.  Has Trans Union provided to outside counsel  13:15
10 who handled claims like the claims in this case any  13:15
11 manuals related to the manner in which outside counsel  13:15
12 should conduct litigation activity?  13:15
13     A.  I think the only manuals we provided to  13:15
14 outside counsel would fall under the category of  13:15
15 policies and procedures manuals or training manuals that  13:16
16 Trans Union uses that would be relevant to the defense  13:16
17 of this matter.  I'm not sure if that's what you're  13:16
18 asking for.  13:16
19     Q.  I'm asking about manuals related to the manner  13:16
20 in which outside counsel should conduct litigation  13:16
21 activities?  13:16
22     A.  Well, I would view the manner in which they  13:16
23 conduct litigation activity to include the information  13:16
24 that they would rely on in defending Trans Union, but  13:16
25 I'm not sure what you mean by the manner in which we  13:16

**Page 13**

1 would ask them to conduct litigation activity.  13:16
2     Q.  That doesn't mean anything to you?  You're not  13:16
3 sure about that, the manner in which outside counsel  13:16
4 should conduct litigation activity to you is not  13:17
5 something that you understand?  13:17
6     MR. BROWN:  Object to form.  13:17
7     THE WITNESS:  Well, I have an understanding of  13:17
8 it, but I'm not sure it's the same as your understanding  13:17
9 of it.  13:17
10 BY MR. CENTO:  13:17
11     Q.  What's your understanding?  13:17
12     A.  My understanding is that the manner of  13:17
13 conducting our defense would refer to looking at our  13:17
14 policies and procedures and training and system  13:17
15 documentation and using that information in our defense.  13:17
16     Q.  What do all of those things have to do with  13:17
17 litigation activities?  13:17
18     MR. BROWN:  Object to form, argumentative.  13:17
19     THE WITNESS:  Well, the defense of the  13:17
20 litigation is what I would refer to as the litigation  13:17
21 activities.  13:17
22 BY MR. CENTO:  13:17
23     Q.  And the manuals you're talking about, the  13:17
24 policies and procedures manuals which you're talking  13:17
25 about, they're Trans Union operating policies and  13:17

4 (Pages 10 - 13)

```
 1  procedures, right?                              13:17
 2       MR. BROWN: Objection. Object to form. It    13:18
 3  doesn't correctly characterize the witness' earlier  13:18
 4  testimony.                                       13:18
 5       MR. CENTO: Go ahead.                        13:18
 6       THE WITNESS: I was referring to corporate   13:18
 7  policies and procedures, system documentation, training  13:18
 8  materials. I can't remember what else I said, but those  13:18
 9  are the things that we provide to our outside counsel to  13:18
10  use in the defense of litigation against Trans Union.  13:18
11  BY MR. CENTO:                                     13:18
12       Q. Well, don't you provide those because they're  13:18
13  asked for in discovery?                          13:18
14       MR. BROWN: Object to form.                  13:18
15       THE WITNESS: Not exclusively.               13:18
16  BY MR. CENTO:                                     13:18
17       Q. Okay. Are there some manuals that you provide  13:18
18  exclusively for the purpose you just -- you were just  13:18
19  describing that aren't produced because they're   13:18
20  requested in discovery?                          13:18
21       MR. BROWN: Object to form.                  13:18
22       THE WITNESS: If I understand the question   13:19
23  you're asking, the manuals and documents that we provide  13:19
24  to our outside counsel to use in the defense of   13:19
25  litigation encompasses much more than what is typically  13:19
                                              Page 14
```

```
 1  requested in discovery from case to case.        13:19
 2  BY MR. CENTO:                                     13:19
 3       Q. And -- and can you give me an example of a  13:19
 4  manual that is more than that?                   13:19
 5       MR. BROWN: Object to form. I'm going to     13:19
 6  instruct the witness not to -- not to answer.    13:19
 7       MR. CENTO: You're -- you're asking her not  13:19
 8  to -- you're telling her not to answer my question  13:19
 9  asking her to identify one of these manuals?     13:19
10       MR. BROWN: Correct. We're not going to be   13:19
11  talking about any specific documents here whether by way  13:19
12  of example or otherwise.                         13:19
13       MR. CENTO: Okay. Let's -- I disagree. Let's  13:19
14  see what the judge says.                         13:20
15       MR. BROWN: Are we going to do that now?     13:20
16       MR. CENTO: Yeah.                            13:20
17       MR. BROWN: Let us know when you have the    13:20
18  Court on the line.                               13:20
19       MR. BROWN: As far as I'm concerned, we can go  13:20
20  off the record until -- until and when we get the Court  13:20
21  on the line.                                     13:20
22       MR. BROWN: Agreed.                          13:20
23       THE VIDEOGRAPHER: We're going off the record.  13:20
24  The time is 1:17 p.m.                            13:20
25            (Whereupon there was a brief           13:20
                                              Page 15
```

```
 1            break, after which the                13:20
 2            following proceedings were            13:20
 3            had:)                                 13:20
 4       THE VIDEOGRAPHER: We are back on the record.  13:31
 5  The time is 1:29 p.m. Please, proceed.           13:31
 6  BY MR. CENTO:                                     13:31
 7       Q. So you won't identify any manuals, but can  13:31
 8  you -- can -- I still don't understand what these  13:31
 9  manuals are about. What is -- what is the subject of  13:31
10  these manuals?                                   13:31
11       MR. BROWN: Object to form. I'm not sure     13:31
12  that's a question.                              13:31
13  BY MR. CENTO:                                     13:31
14       Q. Go ahead.                               13:32
15       A. I believe the manuals to which I'm referring  13:32
16  would be manuals pertaining to policies and procedures  13:32
17  of Trans Union, system requirements or specifications  13:32
18  for Trans Union and training materials for Trans Union.  13:32
19       Q. You said system requirements, and then what  13:32
20  was after that?                                 13:32
21       A. Training materials.                      13:32
22       Q. So policies and procedures for system     13:32
23  requirements or is policies and procedures a separate  13:32
24  category?                                       13:32
25       MR. BROWN: Object to form. I'm going to     13:32
                                              Page 16
```

```
 1  suggest that the court reporter read back the answer.  13:32
 2       MR. CENTO: No, no thank you. I don't need   13:32
 3  the answer read back. You can have her read it back  13:32
 4  when -- if you ask your question.               13:32
 5  BY MR. CENTO:                                     13:32
 6       Q. So my question was, you said policies and  13:32
 7  procedures, and then you said system requirements and  13:32
 8  these other things. Are you saying policies and   13:33
 9  procedures about system requirements or is policies and  13:33
10  procedures a separate thing?                     13:33
11       A. I was referring to policies and procedures  13:33
12  separately from the system requirements.         13:33
13       Q. Okay. So policies and procedures, system  13:33
14  requirements, training. Anything else?          13:33
15       A. Any system documentation.                13:33
16       Q. Anything else?                           13:33
17       A. That's all I can think of at the moment.  13:33
18       Q. Okay. What -- what -- policies and procedures  13:33
19  about what?                                     13:33
20       A. Trans Union has numerous policies and     13:33
21  procedures pertaining to our compliance obligations  13:33
22  under the Fair Credit Reporting Act as well as policies  13:33
23  and procedures regarding operations. Those are probably  13:33
24  the two primary categories I can think of that we would  13:34
25  provide to outside counsel for use in defense of  13:34
                                              Page 17
```

5 (Pages 14 - 17)

1 litigation. 13:34
2 Q. And the compliance procedures, policies and 13:34
3 procedures that you talked about, are they the things 13:34
4 that Trans Union should do in its operations to comply 13:34
5 or are they specific about with outside litigation? 13:34
6 MR. BROWN: Object to form. If the witness 13:34
7 understands the question, she can answer. 13:34
8 THE WITNESS: I don't think the policies and 13:34
9 procedures are written specifically with a view to 13:34
10 litigation. They are written more with a view to 13:34
11 establish -- to determine what is required by the Fair 13:34
12 Credit Reporting Act, how Trans Union interprets those 13:34
13 requirements and how our compliance with those 13:34
14 obligations and policies and procedures would avoid 13:35
15 litigation. 13:35
16 BY MR. CENTO: 13:35
17 Q. And operations, what are those policies and 13:35
18 procedures about? What about operations? 13:35
19 A. So the policies and procedures that are 13:35
20 specific to different operations in the enterprise would 13:35
21 be more aimed to the mechanics of how to perform an 13:35
22 activity that's required or advisable under the Fair 13:35
23 Credit Reporting Act. 13:35
24 Q. Okay. Operations like handling a consumer's 13:35
25 dispute? 13:35
Page 18

1 2:14-CV-135. Show that this matter is before 13:40
2 William Huffman, magistrate today, February 11th. It's 13:40
3 about 1:45. My understanding the parties are in the 13:40
4 middle of a deposition, and there is a question about 13:40
5 whether a particular question or series of questions 13:40
6 fall within some restrictions that the Court has 13:40
7 proposed at document item 32, and that's my 13:40
8 understanding, but I guess I'm not sure who -- who wants 13:40
9 to carry the ball as to what I need to decide. 13:40
10 John Cento, do you want to tell me from your 13:40
11 perspective the -- what you think the issues are? 13:40
12 MR. CENTO: Certainly, your Honor. If you 13:40
13 were to refer back to the order, Topic C was about 13:40
14 written instructions or manuals related to the manner in 13:40
15 which outside counsel conducts litigation activities 13:40
16 that Trans Union has provided to its outside counsel. 13:40
17 So I asked that very question specific to whether they 13:40
18 provided manuals, and the witness responded that they 13:40
19 did provide manuals, and I asked the witness to identify 13:41
20 one of those manuals and was told no, and the witness 13:41
21 was instructed not to answer that question. 13:41
22 THE COURT: Well, Brown, what would be your 13:41
23 reason for finding that that did not fall within the 13:41
24 scope of paragraph C? 13:41
25 MR. BROWN: Your Honor, the Seventh Circuit 13:41
Page 20

1 A. That might be an example. 13:35
2 Q. Would another example be how to process 13:36
3 furnisher data? 13:36
4 THE COURT REPORTER: What's the word in front 13:36
5 of data? 13:36
6 THE WITNESS: Furnisher. 13:36
7 I think there is some furnisher data 13:36
8 processing documentation we have provided to outside 13:36
9 counsel. That wasn't specifically what I was thinking 13:36
10 of, but there probably are documents and policies around 13:36
11 that in the -- in the totality of what we have provided 13:36
12 to outside counsel for defense purposes. 13:36
13 MR. CENTO: I have the what I -- what I 13:36
14 believe is the judge calling on the other line. Could 13:36
15 you hold for just a second. 13:36
16 Would you go off the record, please. 13:36
17 THE VIDEOGRAPHER: We are going off the 13:36
18 record. The time is 1:34 p.m. 13:37
19 (Whereupon there was a brief 13:37
20 break, after which the 13:37
21 following proceedings were 13:37
22 had:) 13:37
23 (Whereupon a discussion was off 13:37
24 the video record.) 13:37
25 THE COURT: Let's show that this is cause 13:39
Page 19

1 has made very clear that when examining these issues, 13:41
2 you can talk generally, but you can't examine about the 13:41
3 proprietary information itself in -- in the course of 13:41
4 trying to determine whether or not the attorney was in 13:41
5 position to receive proprietary information. 13:41
6 THE COURT: All right. But my understanding 13:41
7 of the question is to identify the manuals, not to 13:41
8 disclose their contents. It would be my understanding 13:42
9 that one of the areas that we would have to deal with 13:42
10 here is whether manuals were provided in -- in 2005 or 13:42
11 before and whether there have been subsequent changes or 13:42
12 not to those manuals. I think my understanding of 13:42
13 paragraph C and the question asked is that the witness 13:42
14 would be required to describe or name or -- or delete. 13:42
15 This is a manual that was given to counsel during the 13:42
16 period of 2000X to 2000Y, and its title is X, and then 13:42
17 if the question was, have there been amendments to that 13:42
18 document that have been provided to counsel between then 13:42
19 and now, the answer -- if the answer is no, then that's 13:42
20 one issue. If the answer is yes, then I would expect 13:42
21 the witness to identify what is the nature, when -- was 13:42
22 the change made, what is -- what is the change made. It 13:43
23 may not have to be a, you know, a determination at this 13:43
24 stage of whether the contents are there, but the 13:43
25 question is whether there has been a substantial change 13:43
Page 21

Page 22

1 in instructions.                                          13:43
2       So my understanding, Will, is that I would    13:43
3 overrule the objection to identifying the manuals in      13:43
4 some manner, identifying what's their title, during what  13:43
5 periods of time they were in effect, what periods of      13:43
6 time they changed, if any.  Obviously, the question of    13:43
7 what does manual A say and what does manual B say, I      13:43
8 understand your objection to those cases -- those issues  13:43
9 might be well taken at least as being premature, but at   13:43
10 this stage, I certainly would allow a definition of what  13:43
11 documents are out there to be answered as a part of the   13:43
12 deposition.  At least that was my intent in framing       13:44
13 category C in that manner.                                13:44
14       MR. BROWN:  Your -- your Honor, respectfully,  13:44
15 it's Trans Union's position that the existence or         13:44
16 nonexistence of a specific manual identified by name      13:44
17 after the witness has already said that these are not     13:44
18 exclusively manuals that are produced in discovery but    13:44
19 provided to outside counsel for purposes of defending     13:44
20 litigation, that even identifying what exists and what    13:44
21 doesn't and naming specific manuals would be outside the  13:44
22 discovery permissible under the Seventh Circuit           13:44
23 precedent.                                                13:44
24       THE COURT:  Well, you did not file an          13:44
25 objection within ten days of the Magistrate's order of    13:44

Page 23

1 December 14th, did you?                                    13:44
2       MR. BROWN:  I did not.                          13:44
3       THE COURT:  Okay.  Then that's a matter         13:44
4 that you've -- you've not filed a timely objection.  I'm  13:44
5 going to overrule your objection.  Now -- now, of course  13:44
6 -- well, you can go ahead and order that person not to    13:44
7 answer those questions and then they'll need to be        13:45
8 certified, and then if there's a further motion to        13:45
9 compel, I'll have to take under advisement whether at     13:45
10 this stage I believe that that was an improper objection  13:45
11 and if it was, whether any sanctions have to be ordered   13:45
12 by way of attorneys fees for the further motion to        13:45
13 compel.                                                   13:45
14       So I think that's where you are well at this    13:45
15 stage is, you're too late to change the nature of the     13:45
16 order.  I'm interpreting the order -- my understanding    13:45
17 of the order that was given.  You, obviously, can do      13:45
18 whatever you need to do to protect your client's          13:45
19 interest, but it is likely that I would find your         13:45
20 objection to be not well taken and it is fairly likely    13:45
21 that I would then issue some sort of costs with respect   13:45
22 to a motion to compel, unless -- well, that's something   13:45
23 obviously, you have the right to do.                      13:45
24       MR. BROWN:  Yes, sir.  I appreciate the         13:45
25 Court's guidance.                                         13:45

Page 24

1       THE COURT:  Yeah.  Okay?  So questions of that  13:45
2 nature is what I try to let you finish the deposition     13:46
3 on.  I do not generally referee depositions question by   13:46
4 question, and my problem is I have another conference     13:46
5 coming up shortly that I won't be able to stay on this    13:46
6 one very long with.  So I think I'd like to see how you   13:46
7 guys will go forward in a good lawyerly manner and see    13:46
8 if you can resolve it, but I will be around today, and I  13:46
9 will be in and out of various conferences.  So if you     13:46
10 get stuck on another question, you can let me know.  You  13:46
11 need to call the area code (812) 434-6430 number to let   13:46
12 us know that you've got a problem and then we would put   13:46
13 you back on this number to the extent we need to go on    13:46
14 the record someplace.  Okay?                              13:46
15       MR. BROWN:  Understood, your Honor.             13:46
16       THE COURT:  Okay.  Great.  All right.  Well,    13:46
17 you guys good luck on that one and keep plowing away      13:47
18 and -- and we'll go from there.  Okay?                    13:47
19       MR. BROWN:  Thank you, sir.                     13:47
20       MR. CENTO:  Thank you, your Honor.              13:47
21       THE COURT:  Okay.  Thanks.  Sure.  Bye-bye.    13:47
22       MR. BROWN:  John, I suggest that we take a      13:47
23 break.                                                    13:47
24       MR. CENTO:  I prefer not to.  I'd like to have  13:47
25 her answer -- find out if she's going to answer the       13:47

Page 25

1 question before you two walk out of the room.             13:47
2       MR. BROWN:  All right.  Does the court           13:47
3 reporter want to read back the question or how do you     13:47
4 want to handle that?                                      13:47
5       MR. CENTO:  I'll just ask the question again.   13:47
6 So back on the record.                                    13:47
7       THE VIDEOGRAPHER.  We are back on the record.   13:47
8 The time is 1:45 p.m.  Please, proceed.                   13:47
9 BY MR. CENTO:                                             13:47
10   Q.  So you've been telling me about the manuals    13:47
11 that are provided to outside counsel in response to a     13:48
12 question I asked you earlier paragraph C from the order   13:48
13 identify one of those manuals for me.                     13:48
14   A.  One of the manuals to which I was referring    13:48
15 probably isn't best categorized as a manual, but we      13:48
16 refer to it internally as the CRS Online Help            13:48
17 Documentation.                                            13:48
18   Q.  Can you identify any other manuals other than  13:48
19 that?                                                     13:48
20   A.  I believe another example of documentation we  13:48
21 provide to outside counsel is the online dispute          13:48
22 automation business requirements.                        13:49
23   Q.  Okay.  Any others?                              13:49
24   A.  Another example I can think of would be -- I   13:49
25 don't know the correct title for it, but I would refer   13:49

7 (Pages 22 - 25)

| | | |
|---|---|---|
| 1 | to it as our subject selection documentation. | 13:49 |
| 2 | Q.  Any others? | 13:49 |
| 3 | A.  Well, we have several hundred compliance | 13:49 |
| 4 | policies or SOPs.  I don't know for sure which of those | 13:49 |
| 5 | we would have provided to outside counsel.  Some of | 13:49 |
| 6 | these would be provided, though, in connection with | 13:49 |
| 7 | defense of a specific matter and others would be | 13:49 |
| 8 | provided just to get counsel's input on a draft | 13:49 |
| 9 | document. | 13:49 |
| 10 | Q.  Anything else? | 13:49 |
| 11 | A.  Nothing I can think of at the moment. | 13:50 |
| 12 | MR. CENTO:  We can take that break now. | 13:50 |
| 13 | MR. BROWN:  Thank you. | 13:50 |
| 14 | THE VIDEOGRAPHER:  We are going off the | 13:50 |
| 15 | record.  The time is 1:47 p.m. | 13:57 |
| 16 | (Whereupon there was a brief | 13:57 |
| 17 | break, after which the | 13:57 |
| 18 | following proceedings were | 13:57 |
| 19 | had:) | 13:57 |
| 20 | THE VIDEOGRAPHER:  We are back on the record. | 13:58 |
| 21 | The time is 1:56 p.m., Please, proceed. | 13:58 |
| 22 | BY MR. CENTO: | 13:58 |
| 23 | Q.  What is the CRS Online Help Documentation | 13:58 |
| 24 | about? | 13:58 |
| 25 | MR. BROWN:  Object to form and object to | 13:58 |

Page 26

| | | |
|---|---|---|
| 1 | automation business requirements. | 14:00 |
| 2 | Q.  That's it.  What's that about? | 14:00 |
| 3 | A.  Those would be the business rules that are | 14:00 |
| 4 | used in the online dispute processing system we make | 14:00 |
| 5 | available for consumers to go online on the internet and | 14:00 |
| 6 | make a dispute, and those rules are intended to | 14:00 |
| 7 | replicate what an agent would do if the consumer either | 14:00 |
| 8 | called in on our toll free number or wrote in to us with | 14:01 |
| 9 | his dispute. | 14:01 |
| 10 | Q.  Is that document ever produced in litigation? | 14:01 |
| 11 | A.  I don't know.  But I do know it has been | 14:01 |
| 12 | reviewed with outside defense counsel. | 14:01 |
| 13 | Q.  What about the subject selection | 14:01 |
| 14 | documentation? | 14:01 |
| 15 | A.  That again -- | 14:01 |
| 16 | Q.  What's that about? | 14:01 |
| 17 | A.  I'm sorry. | 14:01 |
| 18 | Q.  I just said what's that about? | 14:01 |
| 19 | A.  That is the documentation of Trans Union's | 14:01 |
| 20 | proprietary matching logic that describes how we would | 14:01 |
| 21 | apply different matching routines to different inputs | 14:01 |
| 22 | and data on the file to determine whether data matches | 14:01 |
| 23 | and should be added to the file of a consumer or to | 14:01 |
| 24 | determine whether we should return a credit report when | 14:01 |
| 25 | one is requested.  It's the area that Lynn Romanowski | 14:02 |

Page 28

| | | |
|---|---|---|
| 1 | outside the scope, but I'm going to allow the witness to | 13:58 |
| 2 | answer. | 13:58 |
| 3 | THE WITNESS:  That's the documentation that | 13:58 |
| 4 | was initially created around the time the -- of the Fact | 13:58 |
| 5 | Act amendments to the Fair Credit Reporting Act.  So I | 13:58 |
| 6 | want to say it was the 2002-2003 time frame, and that's | 13:59 |
| 7 | all the documentation that's used to train consumer | 13:59 |
| 8 | relations operators.  It includes resources for the | 13:59 |
| 9 | operators to refer while they're processing a consumer's | 13:59 |
| 10 | request.  It has system screen shots.  It's a very | 13:59 |
| 11 | voluminous set of documents, but that's what I was | 13:59 |
| 12 | referring to when I said the CRS Online Help Center. | 13:59 |
| 13 | BY MR. CENTO: | 13:59 |
| 14 | Q.  Is that document or parts of it ever produced | 13:59 |
| 15 | in litigation? | 13:59 |
| 16 | MR. BROWN:  Excuse me?  Object to form.  The | 13:59 |
| 17 | witness can answer, if she knows. | 13:59 |
| 18 | THE WITNESS:  I don't know. | 13:59 |
| 19 | BY MR. CENTO: | 13:59 |
| 20 | Q.  Would the online dispute automation -- what | 14:00 |
| 21 | was that again?  Online disputes?  My notes are a little | 14:00 |
| 22 | fuzzy.  You said -- the second manual you identified -- | 14:00 |
| 23 | you called it online disputes, consumer something | 14:00 |
| 24 | business.  Do you know which one I'm talking about? | 14:00 |
| 25 | A.  I think I mentioned the online dispute | 14:00 |

Page 27

| | | |
|---|---|---|
| 1 | has been involved in. | 14:02 |
| 2 | Q.  Is that document ever produced in litigation? | 14:02 |
| 3 | A.  I guess just to clarify, I don't think it's | 14:02 |
| 4 | one documents.  It's hundreds of documents documenting | 14:02 |
| 5 | the different business rules, and I don't know for | 14:02 |
| 6 | certain what portions of that have and have not been | 14:02 |
| 7 | produced. | 14:02 |
| 8 | Q.  But do you understand that some have been | 14:02 |
| 9 | produced? | 14:02 |
| 10 | MR. BROWN:  Object to form, mischaracterizes | 14:02 |
| 11 | the witness' earlier testimony. | 14:02 |
| 12 | BY MR. CENTO: | 14:02 |
| 13 | Q.  Go ahead. | 14:02 |
| 14 | A.  I would have -- I would only be guessing or | 14:02 |
| 15 | speculating.  I don't know for certain whether any of | 14:02 |
| 16 | that has been produced. | 14:02 |
| 17 | Q.  When you mention hundreds of compliance | 14:02 |
| 18 | policies, any of those compliance policies -- would any | 14:02 |
| 19 | of them contain information relevant to this case? | 14:03 |
| 20 | MR. BROWN:  Object to form.  The witness can | 14:03 |
| 21 | answer, if she knows. | 14:03 |
| 22 | THE WITNESS:  Yes. | 14:03 |
| 23 | BY MR. CENTO: | 14:03 |
| 24 | Q.  Okay.  Which ones contain information relevant | 14:03 |
| 25 | to this case? | 14:03 |

Page 29

8 (Pages 26 - 29)

1    A.  I would imagine that the policies and    14:03
2 procedures that relate -- or the compliance policies   14:03
3 that relate to processing a consumer's dispute as    14:03
4 required by the Fair Credit Reporting Act within the   14:03
5 appropriate time frames with the communication of the   14:03
6 information as required by the Fair Credit Reporting   14:03
7 Act, I think those policies and procedures would be   14:03
8 relevant.    14:03
9    Q.  Anything else?    14:03
10    A.  There are probably some policies and   14:04
11 procedures that would be relevant to the Fair Credit   14:04
12 Reporting Act provisions regarding reasonable procedures  14:04
13 to assure maximum possible accuracy. I would imagine   14:04
14 some of those would be relevant.    14:04
15    Q.  Anything else?    14:04
16    A.  Nothing I can think of at the moment.   14:04
17    Q.  The policies and procedures that relate to the  14:04
18 processing consumer disputes you just mentioned, are   14:04
19 those ever produced in litigation?    14:04
20    A.  I don't know.    14:04
21    Q.  The policies and procedures that relate to   14:05
22 FCRA, the FCRA regarding reasonable procedures, are they  14:05
23 ever produced in litigation?    14:05
24    A.  I don't know.    14:05
25    Q.  So is the reason that you don't know why --  14:05

Page 30

1 whether or not these policies -- these manuals are ever  14:05
2 produced in litigation, is that because you don't   14:05
3 usually get involved in the discovery process in these  14:05
4 cases?    14:05
5    MR. BROWN:  Object to form.    14:05
6    THE WITNESS:  The reason I don't know what is  14:05
7 specifically produced is because we rely on the two or  14:05
8 three outside firms that we've used for the past   14:05
9 probably close to 20 years to handle the day-to-day   14:05
10 discovery. They don't have to check with us on every   14:06
11 single thing they do because we've had such a    14:06
12 longstanding relationship.    14:06
13 BY MR. CENTO:    14:06
14    Q.  Who are the two or three outside firms   14:06
15 currently?    14:06
16    A.  Currently, the two primary firms we use is   14:06
17 Schuckit & Associates.  And Strasburger & Price out of  14:06
18 Texas.    14:06
19    Q.  And who were they in 2005?    14:06
20    A.  The same firms, I believe.    14:06
21    Q.  The same two firms?    14:06
22    A.  Yes.    14:06
23    Q.  There weren't any other firms?    14:06
24    A.  They've always been a few other firms on   14:06
25 the -- on the defense team we use.  And they still   14:06

Page 31

1 represent us sometimes as local counsel in a particular  14:06
2 part of the country.    14:07
3    Q.  What firms are those?    14:07
4    A.  We used to use a firm in the Philadelphia area  14:07
5 that I don't believe exists anymore.  You may recall   14:07
6 the -- the partner Mark Cogan and a lawyer named   14:07
7 Bruce Luckman who worked at that firm did some work for  14:07
8 us and Mr. Luckman still -- still works as outside   14:07
9 counsel for us on some matters. There's a firm in   14:07
10 California that acts as local counsel on certain   14:07
11 matters.  A lawyer named Don Bradley.  I don't recall  14:07
12 his firm's name, though.  I don't recall who else.   14:07
13    Q.  All right.  Can you think of any -- any other  14:08
14 manuals which you haven't told me about that would be   14:08
15 included in these group of manuals you give to outside  14:08
16 counsel that relate to the manner in which outside   14:08
17 counsel should conduct litigation activities?    14:08
18    MR. BROWN:  Object to form and object on the   14:08
19 basis that it mischaracterizes the witness' earlier   14:08
20 testimony.    14:08
21 BY MR. CENTO:    14:08
22    Q.  Go ahead.    14:08
23    A.  So I can't think of anything specifically, but  14:08
24 I know that we are regularly -- sorry.  Is that --   14:08
25    MR. BROWN:  Are you still there, John?   14:08

Page 32

1    MR. CENTO:  Yeah, I'm here.    14:08
2    MR. BROWN:  We got a beeping on our end.   14:08
3    MR. CENTO:  Oh, I didn't hear.    14:08
4    MR. BROWN:  Sorry.  Maybe that was feedback on  14:08
5 our phone.  I'm sorry.  I lost my train of thought.   14:09
6    I can't think of any manual specifically, but   14:09
7 I know that over the years, we have reviewed a lot of   14:09
8 our internal documentation with our litigation defense  14:09
9 counsel to get their feedback on mitigation strategies  14:09
10 and compliance strategies but I just -- at the moment I  14:09
11 can't think of any specific documents by name.    14:09
12 BY MR. CENTO:    14:09
13    Q.  Okay.  So the policies and procedures manuals,  14:09
14 the ones about compliance and the FCRA and the    14:09
15 operations that you told me about, did you give those to  14:09
16 outside counsel in 2005 or --    14:10
17    A.  I think we have --    14:10
18    Q.  Or before?    14:10
19    A.  I apologize I didn't catch the end of your   14:10
20 question.    14:10
21    Q.  Or before?    14:10
22    A.  I think parts of the consumer relations   14:10
23 documentation were definitely reviewed with defense   14:10
24 counsel prior to 2005.  I think we elicited input on   14:10
25 that documentation when it was drafted.  In fact, I   14:10

Page 33

9 (Pages 30 - 33)

1 think there are other policies and procedures documents  14:10
2 that we have reviewed with outside counsel prior to  14:10
3 2005. I don't know about the system documentation that  14:10
4 I mentioned regarding the online dispute automation.  14:10
5 That may have -- I don't recall when that was drafted.  14:10
6    Q   What about the system requirements manuals,  14:11
7 are those provided to outside counsel prior to 2000 --  14:11
8 2005 and before?  14:11
9    A   I think versions of the CRS system  14:11
10 documentation was provided to our defense counsel. I  14:11
11 think prior versions of the -- what's now called the  14:11
12 e-Oscar -- that's the letter E and the word "Oscar" --  14:11
13 dispute processing documentation was probably provided  14:11
14 to outside counsel. So I think those system documents  14:11
15 or portions thereof would have been provided to outside  14:11
16 counsel at the time they were created.  14:12
17    Q   But between manuals --  14:12
18    A   Consumer relations training is part of the  14:12
19 CRS online system. So, yes, portions of that would  14:12
20 definitely have been reviewed by outside counsel prior  14:12
21 to 2005.  14:12
22    Q   How about the system documentation?  14:12
23    A   I'm sorry. I didn't catch the question.  14:12
24    Q   What about the system documentation?  14:12
25    A   The CRS documentation is also part of  14:12

Page 34

1    THE WITNESS: I think system documentation is  14:14
2 updated to reflect updates to software or platforms.  14:14
3 So, for example, a screen shot might need to be updated  14:14
4 if the screen looks different as a result of a software  14:14
5 upgrade and in terms of compliance policies and  14:14
6 procedures, new policies and procedures are drafted and  14:14
7 added to the compendium to reflect new requirements  14:15
8 either arising from litigation or arising from changes  14:15
9 in law or industry practices that we observe.  14:15
10    Q   Okay. When in particular were the compliance  14:15
11 manuals revised to reflect updates in law?  14:15
12    A   So compliant -- the compliance policies and  14:15
13 procedures, again, we don't specifically put them in a  14:15
14 paper manual. They're maintained on an online basis,  14:15
15 and those are -- those policies are typically either  14:15
16 updated or new policies are written and added to the  14:15
17 online inventory of policies and procedures based on  14:15
18 changes to law. So, for example, when the Dodd-Frank  14:16
19 law passed, a lot of references in our documentation to  14:16
20 the Federal Trade Commission had to be updated to refer  14:16
21 to the CFPB.  14:16
22    Q   As you sit here today, do you know -- could  14:16
23 you identify and tell me each time that document is  14:16
24 updated?  14:16
25    A   No, I can't.  14:16

Page 36

1 that CRS online document. So portions of that also  14:12
2 would have been provided to outside counsel prior to  14:12
3 2005.  14:12
4    Q   Of the portions of the CRS system  14:12
5 documentation that you say were provided to counsel  14:12
6 before 2005, have those changed?  14:13
7    MR. BROWN: Object to form.  14:13
8    THE WITNESS: So the system documentation that  14:13
9 was drafted at the time -- I'm sorry. The CRS online  14:13
10 help documentation that was drafted around the time of  14:13
11 the Fact Act is constantly being reviewed and  14:13
12 incremental updates are made to that documentation to  14:13
13 reflect changes in law or business practices, so -- or  14:13
14 to improve the wording to make it more easy for the  14:13
15 agents to understand it. We get feedback during the  14:13
16 training process that an agent might not understand  14:13
17 something. So it's redrafted to be more clear. So,  14:14
18 yes, there are updates to that documentation on an  14:14
19 ongoing basis.  14:14
20    Q   What about the compliance policies and  14:14
21 procedures and the operations policies and procedures,  14:14
22 you said some of them -- some of those manuals were  14:14
23 given to outside counsel before 2005. Had those changed  14:14
24 since 2005?  14:14
25    MR. BROWN: Object to form.  14:14

Page 35

1    Q   Is it like the other manuals that we were just  14:16
2 talking about, updated on an ongoing basis?  14:16
3    A   The compliance policies and procedures?  14:16
4    Q   Yes.  14:16
5    A   Well, there was a big update effort to change  14:16
6 the references from the FTC to the CFPB when Dodd-Frank  14:16
7 passed, but other than that, those rarely get updated.  14:17
8 Typically maybe just a new policy would be added to the  14:17
9 inventory of policies.  14:17
10    So, for example, a new State law passes that  14:17
11 changes the price of a security freeze for a consumer.  14:17
12 A new policy would be published to reflect that. Or the  14:17
13 CFPB changes the price that we can charge a consumer for  14:17
14 a disclosure. A policy would be updated to reflect  14:17
15 that, but the core of the policies and procedures,  14:17
16 we've -- we've never gone and done a rewrite of those.  14:17
17 That's remained pretty consistent.  14:17
18    Q   When was the Dodd-Frank related update made?  14:17
19    A   I think Dodd-Frank passed in 2010, and the  14:17
20 CFPB was -- or began operations in 2011. So I think  14:17
21 that we made a number of updates in the late 2010, early  14:18
22 2011 time frame to reflect that the CFPB was now going  14:18
23 to receive certain reports and information that  14:18
24 previously the Federal Trade Commission had received.  14:18
25    Q   In 2012, the CFPB issued a supervision and  14:18

Page 37

10 (Pages 34 - 37)

Page 38

1 examination manual. Are you familiar with that? 14:18
2 A. Yes, I am. 14:18
3 Q. The policies and procedures that we're talking 14:18
4 about updated to reflect the supervision and examination 14:18
5 manual as issued by the CFPB? 14:18
6 A. I don't think -- sorry. Let me rephrase that. 14:18
7 Trans Union did create some new policies and procedures. 14:18
8 For example, regarding third-party oversight in response 14:18
9 to the CFPB supervision and examination manual. I don't 14:18
10 know if those particular policies and procedures were 14:18
11 ever reviewed with outside counsel because I don't think 14:19
12 they're particularly relevant to litigation, but I'm not 14:19
13 completely certain of that. 14:19
14 Q. How do these updates get to outside counsel? 14:19
15 A. It can get to outside counsel in a number of 14:19
16 ways. So we have -- as long as I can remember had an I 14:19
17 want to say annual, but we might have missed a year here 14:19
18 or there summit with our primary defense counsel where 14:19
19 they've come in either to our Chicago headquarters or to 14:19
20 one of our consumer assistant centers for a couple day 14:19
21 meeting to talk about strategy, to talk about policies 14:19
22 and procedures, to talk about what kind of claims we're 14:19
23 seeing where they would make suggestions to us to 14:19
24 mitigate risk, and in those summit meetings, we would 14:20
25 typically review either recent updates or proposed 14:20

Page 39

1 updates with our outside counsel to get their feedback. 14:20
2 That's one way. 14:20
3 Another way we would convey updates would be 14:20
4 after we publish an update or publish a new policy, we 14:20
5 would typically send it to outside counsel, particularly 14:20
6 if we thought it was relevant to, you know, defense 14:20
7 strategy or defending a particular group of cases that 14:20
8 they're handling for us. And then I think, 14:20
9 periodically, when our outside counsel have brought on 14:20
10 new associates, we've -- we've done some specific 14:20
11 training and review of policies and procedures with the 14:20
12 lawyers at the firm just to make sure everybody is up to 14:20
13 date on what documentation we have and what resources 14:20
14 are available to the firm in the defense of our 14:21
15 litigation. 14:21
16 Q. And how long have you been following that 14:21
17 practice, since before or after 2005? 14:21
18 MR. BROWN: Object to form. 14:21
19 THE WITNESS: I believe we've been having the 14:21
20 summits going back into the 1990. Certainly since I can 14:21
21 remember those types of meetings and then I think we've 14:21
22 been sending documents and updates and having reviews I 14:21
23 think going back at least to the year 2000. 14:21
24 BY 14:21
25 Q. You said that the compliance documents are -- 14:21

Page 40

1 they're an online based document. They're not written 14:22
2 in a manual. How do the outside counsel see an online 14:22
3 based document, if it's not written in a manual? 14:22
4 MR. BROWN: Object to form and also object 14:22
5 that it mischaracterize the witness' prior testimony. 14:22
6 BY MR. CENTO: 14:22
7 Q. Go ahead. 14:22
8 A. So many of the documents I refer to are 14:22
9 maintained electronically. So either a screen shot of 14:22
10 the document or we can make a PDF of the documents and 14:22
11 send those electronically to outside counsel. And then, 14:22
12 again, when outside counsel is working in our premises 14:22
13 with our witnesses or employees in defending a case, 14:22
14 they've got access to our online -- our online 14:22
15 documentation right along with the Trans Union employee. 14:22
16 We also share some -- some documents 14:22
17 through a -- I don't know the name of the litigation 14:22
18 systems we're using write now, but I know there's been a 14:22
19 way to share documents through an online internet 14:23
20 based -- or web-based software, but we've changed the 14:23
21 platforms we've used over the years for how we share 14:23
22 those documents. 14:23
23 Q. These compliance manuals that you're talking 14:23
24 about, are any of them relevant to the claims brought by 14:23
25 Mr. Watkins in this case? 14:23

Page 41

1 MR. BROWN: Object to form. 14:23
2 THE WITNESS: Well, I think that -- I'm not 14:23
3 sure how this question is different than the one we 14:23
4 talked about before, but I think the policies around 14:23
5 dispute handling and the requirements, the Fair Credit 14:23
6 Reporting Act and probably the policies around 14:23
7 reasonable procedures to ensure maximum possible 14:23
8 accuracy, those policies are relevant to pretty much 14:23
9 every lawsuit that's filed against Trans Union. 14:23
10 Q. I was actually -- I know I asked you that 14:23
11 question about the dispute handling policies, but I was 14:24
12 actually hoping you would focus on these online 14:24
13 compliance manuals. What's in there that's relevant to 14:24
14 any of the claims in this case? 14:24
15 MR. BROWN: Object to form. 14:24
16 THE WITNESS: I believe there's a policy, a 14:24
17 compliance policy, document that relates to the dispute 14:24
18 obligations in the Fair Credit Reporting Act with 14:24
19 respect to timing, so -- or determining whether a 14:24
20 dispute is frivolous or determining how many days we 14:24
21 have to open an investigation, how many days we have to 14:24
22 respond to the consumer. Those types of requirements 14:24
23 from the Fair Credit Reporting Act is documented in 14:24
24 compliance policies. Is that -- is that what you were 14:24
25 asking about? 14:25

11 (Pages 38 - 41)

| | |
|---|---|
| 1    Q.  Sure.                              14:25 | 1   an update because the screen shots had to change so that  14:29 |
| 2         Any others that you can think of?     14:25 | 2   the furnisher would know that there was an associated  14:29 |
| 3    A.  With respect to dispute handling, I can't   14:25 | 3   image available that related to the disputes and they  14:29 |
| 4  think of anything at the moment.              14:25 | 4   would be able to link over to that image while they were  14:29 |
| 5    Q.  Not with respect to dispute handling.  My  14:25 | 5   investigating the dispute that we had sent to the  14:29 |
| 6  question is about these online compliance manuals that  14:25 | 6   furnisher.  So, yes, that's an example of a change  14:29 |
| 7  you've been telling me about.              14:25 | 7   because the screen shots -- the screens have changed for  14:29 |
| 8    A.  So --                            14:25 | 8   the users.  So the screen shots in the documentation  14:29 |
| 9    Q.  Anything -- anything else in there that you  14:25 | 9   needed to be updated.                       14:29 |
| 10  think is relevant to this lawsuit?          14:25 | 10    Q.  In an effort to convey, it's more than just  14:29 |
| 11       MR. BROWN:  Object to form.           14:25 | 11  the screens, right, the actual -- this was a pretty big  14:29 |
| 12       THE WITNESS:  Well, for example, our   14:25 | 12  change, right, being able to add images to disputes?  14:29 |
| 13  compliance department issues policies on how data  14:25 | 13       MR. BROWN:  Object to form, argumentative.  14:30 |
| 14  furnishers should be vetted and that potentially is  14:25 | 14       THE WITNESS:  Well, I guess in terms of  14:30 |
| 15  indirectly relevant to the investigation we conduct with  14:25 | 15  magnitude of change, I think some -- we didn't view it  14:30 |
| 16  a data furnisher on information that's disputed.  I'm  14:25 | 16  as a huge change in terms of what our agents do because  14:30 |
| 17  not sure whether that's specifically relevant to this  14:26 | 17  our agents would already categorize the consumer's  14:30 |
| 18  lawsuit.  There are also policies around how long data  14:26 | 18  dispute and summarize it in a free-form text field, and  14:30 |
| 19  is retained on the database.  There are policies around  14:26 | 19  a lot of the documents don't have any material  14:30 |
| 20  what consumer identification is required to make a  14:26 | 20  incremental value to that process, but in terms of what  14:30 |
| 21  disclosure.  I -- I just haven't dived deeply enough  14:26 | 21  a data furnisher does, it was a fairly big change for  14:30 |
| 22  into the facts of this case to determine which of the  14:26 | 22  them to have to view the documents that we were  14:30 |
| 23  policies and procedures would be relevant to the defense  14:26 | 23  forwarding on and just confirm that there was nothing in  14:30 |
| 24  of this particular matter, but, again, we have a core  14:26 | 24  there that would change the outcome of the dispute, but  14:30 |
| 25  set of policies and procedures that are -- are generally  14:26 | 25  from the Trans Union side, it was not that big of a  14:30 |
|                                   Page 42 |                                   Page 44 |

| | |
|---|---|
| 1  relevant to our litigation defense.          14:26 | 1  change.                               14:30 |
| 2  BY MR. CENTO:                           14:26 | 2  BY MR. CENTO:                           14:30 |
| 3    Q.  Any others that you can think of?       14:26 | 3    Q.  And the change is related to images that  14:30 |
| 4    A.  No, I can't think of anything else right now.  14:26 | 4  happened in what, 2013?                    14:31 |
| 5    Q.  Dispute processing documents, how often do  14:27 | 5       MR. BROWN:  Object to form.           14:31 |
| 6  they change?                            14:27 | 6       THE WITNESS:  I do believe the linking and  14:31 |
| 7    A.  Well, the e-Oscar system that we use to convey  14:27 | 7  image enhancement went live in August of 2013.  14:31 |
| 8  a dispute to a data furnisher is updated I would guess a  14:27 | 8  BY MR. CENTO:                           14:31 |
| 9  couple times a year.  A new code might be added that  14:27 | 9    Q.  Have the CRS online -- I'm sorry.  Was the CRS  14:31 |
| 10  could be used in that system or a definition to a code  14:28 | 10  online help documentation given to outside counsel prior  14:31 |
| 11  might be changed.  So those types of updates will happen  14:28 | 11  to 2005?                              14:31 |
| 12  maybe a couple times a year, and then, again, the screen  14:28 | 12    A.  I know portions of it were given to outside  14:31 |
| 13  shots that a data furnisher sees when they are accessing  14:28 | 13  counsel prior to 2005.                     14:31 |
| 14  a dispute can be updated when there's a software update.  14:28 | 14    Q.  Which portion?                    14:31 |
| 15  So the documentation -- the training documentation that  14:28 | 15    A.  Probably the portions relating to dispute  14:31 |
| 16  Trans Union would use and our furnishers would use and  14:28 | 16  handling and training of our dispute operators.  I don't  14:32 |
| 17  what we would share with our defense counsel, those  14:28 | 17  know if the portions pertaining to disclosures would  14:32 |
| 18  things get updated to reflect those types of changes, I  14:28 | 18  have been shared with outside counsel because that's not  14:32 |
| 19  would estimate a couple times a year.          14:28 | 19  an area we get a lot of litigation about.  I'm trying to  14:32 |
| 20    Q.  So the e-Oscar dispute processing manuals was  14:28 | 20  think what else?  Probably most of the sections to  14:32 |
| 21  updated when e-Oscar began implementing the change in  14:28 | 21  dispute handling would have been shared with outside  14:32 |
| 22  the e-Oscar system that allows for consumer reporting  14:28 | 22  counsel prior to 2005.  Probably at the time it was  14:32 |
| 23  agencies to attach PDF documents to the dispute?  14:29 | 23  drafted.                              14:32 |
| 24       MR. BROWN:  Object to form.           14:29 | 24    Q.  And -- and when you -- when you say  14:32 |
| 25       THE WITNESS:  Yes.  That's a good example of  14:29 | 25  disclosures, you're talking about when a consumer  14:32 |
|                                   Page 43 |                                   Page 45 |

Veritext Legal Solutions
866 299-5127

```
 1  requests a copy of their credit file?            14:36
 2    A.  Yes, that's correct.              14:32
 3    Q.  Any -- any other portions that you can think    14:32
 4  of that would have been shared with outside counsel   14:32
 5  prior to 2005?                     14:32
 6    A.  I don't know whether the portions relating to   14:32
 7  quality assurance would have been shared.  I do believe  14:32
 8  the sample -- I'm sorry.  The templates we use for    14:33
 9  letters to consumers have been shared with outside    14:33
10  counsel and certainly would have been shared prior to   14:33
11  2005 because some of the wording of those letters was   14:33
12  the subject of litigation.              14:33
13    Q.  Anything else?                 14:33
14    A.  I can't think of what else we might have     14:33
15  shared.                         14:33
16    Q.  As far as the dispute handling, the portion of  14:33
17  the CRS online help documentation that was shared with  14:33
18  outside counsel prior to 2005, have those documents    14:33
19  changed since?                     14:33
20    A.  Well, I'm certain there were some changes to   14:33
21  those documents because as I mentioned, the sample    14:33
22  letters that might go to a consumer in connection with  14:33
23  communicating with the consumer about their dispute,   14:34
24  that would certainly -- updates are made to those     14:34
25  periodically to make the language more consumer friendly 14:34
```
Page 46

```
 1  requirements, are those -- were those manuals provided  14:36
 2  to outside counsel prior to 2005?          14:36
 3    A.  I don't know.  I don't remember when -- when   14:36
 4  Trans Union instituted the online dispute automation   14:37
 5  system.                         14:37
 6    Q.  The subject selection documentation, were     14:37
 7  those manuals provided to outside counsel prior to 2005? 14:37
 8    A.  I'm quite certain that some of the subject     14:37
 9  selection documentation was provided to outside counsel  14:37
10  prior to 2005.                     14:37
11    Q.  And which -- which ones?            14:37
12    A.  Well, subject selection documentation goes to  14:37
13  thousands of pages because there's a document that    14:37
14  describes potentially every scenario you can imagine   14:37
15  with different combinations of consumers' identification 14:37
16  and different rules we have to recognize, for example, a 14:37
17  nickname.  So those -- those types of -- those --     14:37
18  different documents about the different rules have --   14:38
19  have been provided to outside counsel in connection with 14:38
20  evaluating what's happened in a particular consumer    14:38
21  scenario and how are rules worked to help outside    14:38
22  counsel defend what we've done with a particular's    14:38
23  consumer file.  Those would definitely be reviewed prior 14:38
24  to 2005.                        14:38
25    Q.  Any of the manuals that you're referring to   14:38
```
Page 48

```
 1  or more clear.                     14:34
 2       I think the dispute claim codes that are     14:34
 3  available for a Trans Union agent to use in conveying a  14:34
 4  dispute have -- new codes have been added over the    14:34
 5  years, so that's a change to the documentation.  Trans  14:34
 6  Union periodically changes business rules on how we    14:34
 7                           14:34
 8                           14:34
 9       REDACTED                 14:34
10                           14:34
11       REDACTED                 14:35
12                           14:35
13       REDACTED                 14:35
14                           14:35
15                           14:35
16                           14:35
17                           14:35
18    Q.  Why do you describe the changes as small?    14:35
19    A.  Well, I would describe it as small because    14:35
20  when you think about the fact that the documentation   14:35
21  covers, you know, potentially everything our agents and  14:35
22  operators can do, the changes that we've made refer to  14:35
23  very discreet activities or practices and don't really  14:35
24  affect the core processes and policies that we have.   14:36
25    Q.  The online dispute automation business     14:36
```
Page 47

```
 1  now manuals that would be relevant to any of the claims  14:38
 2  in this case?                      14:38
 3       MR. BROWN:  Object to form.           14:38
 4       THE WITNESS:  I absolutely think some of Trans 14:38
 5  Union's subject selection rules would be relevant to   14:38
 6  this claim.                      14:38
 7  BY MR. CENTO:                     14:38
 8    Q.  Okay.  Can you identify a manual that would be 14:38
 9  relevant by name?                   14:38
10    A.  So just to make sure I understand the       14:38
11  question, I think there is going to be subject selection 14:38
12  documentation that would be relevant that would describe 14:39
13  the rules that were evoked with this plaintiff's credit 14:39
14  file to match data to his file.  Again, it's not a    14:39
15  manual.  It's the documentation of all of the business  14:39
16  rules that are used.  I would imagine that the dispute  14:39
17  handling documentation that's used by consumer relations 14:39
18  would be relevant to this -- this consumer's lawsuits.  14:39
19  Those are probably the two that immediately come to    14:39
20  mind.                          14:39
21    Q.  I'm a little bit confused by your last answer. 14:39
22  You said that what we're talking about now, the subject 14:39
23  selection, is not a manual?  I thought that you gave me  14:39
24  this in response to my question that asked you to     14:39
25  identify which manuals --              14:40
```
Page 49

13 (Pages 46 - 49)

1    MR. BROWN: Object to form.              14:40
2  BY MR. CENTO:                              14:40
3    Q.  (Continuing) -- were given to outside counsel, 14:40
4  so I'm really confused by what you mean when you say the 14:40
5  subject selection is not a manual?          14:40
6      MR. BROWN: Object to form, object as    14:40
7  argumentative and object as not accurately   14:40
8  characterizing the witness' earlier testimony. 14:40
9  BY MR. CENTO:                               14:40
10   Q.  Go ahead.                            14:40
11   A.  So Trans Union generally doesn't use the term 14:40
12  "manual," but as I understand manual, it refers to a 14:40
13  group of documents that are used to either describe 14:40
14  processes or describe practices or describe systems. So 14:40
15  although we don't use the term "manual," I think the 14:40
16  subject selection documentation, which is a compilation 14:40
17  of all of the business rules that Trans Union has in its 14:40
18  proprietary algorithms, I would view that as something 14:40
19  you could classify as a manual even know it's not in 14:40
20  a -- in a binder on a shelf somewhere.       14:41
21   Q.  All right.  With respect to those manuals,  14:41
22  which you said was relevant to this case under the 14:41
23  subject -- subject selection, that were provided to 14:41
24  outside counsel prior to 2005, has any of those changed? 14:41
25   A.  I haven't reviewed the specific subject  14:41

Page 50

1  selection rules that would have been applicable to 14:41
2  Mr. Watkins' credit file update, but my understanding is 14:41
3  that his credit report existed prior to 2005 in the 14:41
4  Trans Union system, so certainly subject selection rules 14:42
5  that existed prior to 2005 could be relevant to how his 14:42
6  credit file was built and how information was added to 14:42
7  his credit file.                            14:42
8      I don't know which specific rules may have 14:42
9  caused information to appear on Mr. Watkins' credit file 14:42
10  that specifically are the subject of his disputes.  So I 14:42
11  don't know whether those rules have -- have changed at 14:42
12  all since 2005.                             14:42
13   Q.  But you think that rules regarding subject 14:42
14  selection from -- prior to 2005 would be relevant to 14:42
15  this case?                                  14:42
16   A.  Absolutely.                           14:42
17   Q.  How so?                               14:42
18   A.  Trans Union's core subject selection rules 14:42
19  were built prior to 2005 and the changes that have been 14:43
20  made to those rules since 2005, again, tend to be very 14:43
21  incremental changes designed to address specific 14:43
22  situations that Trans Union has seen over the years. 14:43
23                                             14:43
24          REDACTED                          14:43
25                                             14:43

Page 51

1                                             14:43
2                                             14:43
3          REDACTED                          14:43
4                                             14:43
5                                             14:43
6                              14:43
7                                             14:43
8          REDACTED                          14:43
9                                             14:44
10                                            14:44
11                                            14:44
12                                            14:44
13                                            14:44
14          REDACTED                          14:44
15                                            14:44
16                                            14:44
17   Q.  Well, if this document is relevant, would you 14:44
18  also agree it's discoverable?               14:44
19      MR. BROWN: Object to form, calls for a legal 14:44
20  conclusion.                                 14:44
21  BY MR. CENTO:                               14:44
22   Q.  Go ahead.                             14:44
23   A.  Well, whether the documentation is      14:44
24  discoverable is not something I would be able to rule 14:44
25  on.  I think it's certainly highly proprietary 14:44

Page 52

1  information and confidential information, and I don't 14:45
2  know to what extent we would be compelled to produce it. 14:45
3   Q.  All right.  Of the hundreds of compliance 14:45
4  policies, you told me about some policies that relate to 14:45
5  processing consumer disputes, and I've asked you a 14:45
6  number of times about what those policies were given to 14:45
7  outside counsel before 2005 and then changed later, and 14:45
8  you often replied to me in response mentioned policies 14:45
9  in dispute related policies.  Are there any consumer 14:45
10  dispute related policies related to this last category 14:45
11  that you haven't told me about?             14:46
12      MR. BROWN: Object to form and object that it 14:46
13  mischaracterizes the witness' earlier testimony.   14:46
14  BY MR. CENTO:                               14:46
15   Q.  Go ahead.                             14:46
16   A.  I haven't looked back at all of the compliance 14:46
17  policies and procedures to see which ones might be 14:46
18  relevant to this litigation, so I don't know.  I don't 14:46
19  know.                                       14:46
20   Q.  Well, did you do that when you gave your 14:46
21  affidavit in Childress?                     14:46
22      MR. BROWN: Object to form.  The witness can 14:46
23  answer if she understands the question.      14:46
24      THE WITNESS: Are you asking if I did an 14:46
25  inventory of our compliance policies and procedures when 14:46

Page 53

14 (Pages 50 - 53)

1  I gave my affidavit in Childress?                14:46
2  BY MR. CENTO:                                    14:46
3    Q.  Yes.  If you made your look back.          14:46
4    A.  No, I didn't.                              14:46
5    Q.  Okay.  You also told me about some policies  14:47
6  and procedures that relate to FCRA regarding reasonable  14:47
7  procedures put into that broader category of the  14:47
8  hundreds of compliance policies that you mentioned.  14:47
9  Were those policies that you were talking about there  14:47
10 given to outside counsel prior to 2005?          14:47
11   A.  I would categorize a number of our compliance  14:47
12 policies as aimed as maintaining reasonable procedures  14:47
13 to maintain maximum possible accuracy.  For example,  14:47
14 data furnisher credentialing and onboarding, and I know  14:47
15 that those have been reviewed and relevant in litigation  14:47
16 with outside counsel and I'm -- I'm pretty confident  14:47
17 they were reviewed with defense counsel prior to 2005.  14:48
18 That's one of our oldest policies, for example, so I  14:48
19 would imagine that it was probably reviewed with outside  14:48
20 counsel in the 1990s.                            14:48
21   Q.  And I'm sorry.  What did you call that again?  14:48
22 The data furnisher what?                         14:48
23   A.  We have several policies that address data  14:48
24 furnisher onboarding to make sure we're getting quality  14:48
25 data from our data furnishers.                   14:48
Page 54

1    Q.  Would that policy -- will those policies be  14:48
2  relevant to any of the claims in this case.      14:48
3      MR. BROWN:  Object to form, calls for       14:48
4  speculation, calls for a legal conclusion.       14:48
5  BY MR. CENTO:                                    14:48
6    Q.  Go ahead.                                  14:48
7    A.  I don't know if we've identified which     14:48
8  policies specifically will be relevant to the defense of  14:48
9  this litigation.  I don't know that we flushed out all  14:48
10 of those details yet.                            14:49
11   Q.  Okay.  As you sit here today, have you     14:49
12 identified any of these policies that you're talking  14:49
13 about, the data furnisher onboarding policies that  14:49
14 relate to any client in this case?               14:49
15     MR. BROWN:  Object to form, object that it   14:49
16 mischaracterizes the witness' earlier testimony.  14:49
17     THE WITNESS:  I would -- I would say that the  14:49
18 defense of any consumer litigation will include   14:49
19 reference to a core set of policies and procedures.  You  14:49
20 know, most of our lawsuits either allege that we failed  14:49
21 to have reasonable procedures to assure maximum possible  14:49
22 accuracy or -- I'm sorry and/or allege that we failed to  14:49
23 process the dispute in compliance with the requirements  14:49
24 of the Fair Credit Reporting Act, and those requirements  14:49
25 have been in the FCRA since I think the 1970s and our  14:49
Page 55

1  policies and procedures aimed at those requirements have  14:50
2  been in place for probably more than 20 years.  So  14:50
3  there's a core set of policies and procedures and  14:50
4  training documents that come into play in almost every  14:50
5  lawsuit we defend, and, you know, I don't want to  14:50
6  speculate, but I think that it's reasonable that some of  14:50
7  those will be relevant in this litigation.       14:50
8    Q.  And of the ones that you're talking about,  14:50
9  this core set, have they changed since 2005?     14:50
10   A.  To the extent that I spoke of previously where  14:50
11 there have been updates to reflect things such as the  14:50
12 CFPB replacing the Federal Trade Commission, those types  14:50
13 of changes have occurred, changes in -- I'm trying to  14:51
14 think.  In the compliance policies and procedures, those  14:51
15 would probably be the -- the only changes that would   14:51
16 have occurred since 2005.                        14:51
17     With respect to changes in some of the system  14:51
18 documentation or subject selection documentation, I  14:51
19 don't know yet whether any of those have changed because  14:51
20 I have not yet determined which of those would have been  14:51
21 relevant in -- in the case of this consumer and in terms  14:51
22 of the consumer relations documentation, there may have  14:51
23 been changes based on a new claim code, certainly  14:51
24 changes to reflect linking and imaging, but, again, a  14:51
25 large portion of those documents will be the same.  14:51
Page 56

1    Q.  These manuals that you've told us about today,  14:52
2  do any of them have as their subject the conduct of  14:52
3  litigation itself?  In other words, how your outside  14:52
4  counsel should actually conduct the case in terms of  14:52
5  what they do in defending the case and strategies in  14:53
6  defending the case?  Are there any manuals related to  14:53
7  that subject?                                    14:53
8      MR. BROWN:  Object to form.                  14:53
9      THE WITNESS:  I think there are some documents  14:53
10 in the consumer relations documentation that talk about  14:53
11 working with outside counsel in defending litigation and  14:53
12 indicate which -- which departments are supposed to  14:53
13 interface with outside counsel or prepare summaries for  14:53
14 outside counsel to use in litigation defense and what  14:53
15 goes into that process.  I don't know that they're  14:53
16 specifically directing outside counsel what to do, but  14:53
17 our outside counsel are familiar with those documents  14:53
18 and know which of our employees to go to and what to ask  14:54
19 for when they need something.                    14:54
20   Q.  Any others?                               14:54
21   A.  I can't think of anything at the moment.   14:54
22     MR. CENTO:  Can we take a five-minute break?  14:54
23     MR. BROWN:  Sure.                           14:54
24     THE VIDEOGRAPHER:  We are going off the      14:54
25 record.  The time is 2:52 p.m.                   15:02
Page 57

15 (Pages 54 - 57)

```
 1          (Whereupon there was a brief   15:02
 2      break, after which the        15:02
 3      following proceedings were    15:02
 4      had:)                         15:02
 5      THE VIDEOGRAPHER:  We are back on the record.  15:02
 6  The time is 3:00 p.m.  Please, proceed.   15:02
 7  BY MR. CENTO:                     15:02
 8      Q.  Are there any general written instructions or  15:02
 9  manuals that were given to outside counsel as part of  15:02
10  their duties in defending litigation that was given to  15:02
11  outside counsel that you haven't told me about?   15:03
12      A.  I don't know whether you would consider   15:03
13  billing requirements or billing practices that we would  15:03
14  provide to outside counsel.  That's the only other thing  15:03
15  I can think of.                   15:03
16      Q.  Does Trans Union intend to raise as a defense  15:03
17  in this case changes in the law that arise out of the  15:03
18  2010 amendments to 15 U.S.C 1681a?   15:03
19      A.  I'm sorry.  Can I have that question again.  15:03
20                                    15:03
21                                    15:04
22                                    15:04
23                                    15:04
24                                    15:04
25                                    15:04
```

REDACTED

Page 58

```
 1          change, as I'm sitting here right now.  I would need to  15:06
 2  review the documents and -- and determine whether they  15:06
 3  changed.                          15:06
 4  BY MR. CENTO:                     15:06
 5      Q.  Have -- have -- and you haven't conducted a   15:06
 6  review like that to determine whether those documents   15:06
 7  have changed?                     15:06
 8      A.  The documents that would be relevant to our   15:06
 9  compliance with 1681e?            15:06
10      Q.  EB?                       15:06
11      A.  Sorry.  EB.  I have not conducted a review of  15:06
12  those in anticipation of this deposition, no.   15:06
13      Q.  Have you conducted a review of them in --   15:06
14  prior to giving your affidavit in either the Childress  15:06
15  or the Hobson case?               15:06
16      A.  I reviewed virtually every change to the   15:07
17  documentation that's occurred.  It's part of my job at  15:07
18  Trans Union.  I've either reviewed it or someone on my  15:07
19  staff has reviewed it, but I did not review it   15:07
20  specifically in connection with preparing the   15:07
21  affidavits, no.                   15:07
22      Q.  Did you review that documentation and the   15:07
23  changes in the documentation as it relates to -- as they  15:07
24  relate to the standards -- the federal laws under   15:07
25  1681i of the Fair Credit Reporting Act --   15:07
```

Page 60

REDACTED

```
 4      Q.  Of the manuals -- of the manuals that you've  15:04
 5  told me about today that were given to outside counsel  15:04
 6  prior to 2005 and that have been changed since, were any  15:04
 7  of those changes made because of things that happened in  15:04
 8  the litigation?  In other words, rulings from -- from   15:04
 9  the Court about certain issues in the cases, rulings by  15:04
10  Court regarding the standards under 1681e or 1681i or   15:05
11  changes like that made to those manuals?   15:05
12      MR. BROWN:  Object to form.   15:05
13      THE WITNESS:  I would say yes.  There have   15:05
14  been changes made as a result of litigation against   15:05
15  Trans Union or decisions issued in litigation against   15:05
16  other consumer reporting agencies, but I can't say   15:05
17  whether or not those are specifically changes relating  15:05
18  to litigation of the sections of the law that you   15:05
19  mentioned.                        15:05
20      Q.  Okay.  So as you sit here today, you can't   15:05
21  think of any changes made to any of the manuals we've   15:05
22  been discussing today that relate to, for example, the  15:05
23  standard under 1681eb?            15:05
24      MR. BROWN:  Object to form.   15:06
25      THE WITNESS:  No, I can't think of a specific  15:06
```

Page 59

```
 1      MR. BROWN:  Object to form.   15:07
 2  BY MR. CENTO:                     15:07
 3      Q.  -- prior -- prior to today's deposition?   15:07
 4      MR. BROWN:  Same objection.   15:07
 5      THE WITNESS:  I would give the same answer.  I  15:07
 6  reviewed the changes and often authored the changes to  15:07
 7  those documents, but I did not do it specifically in   15:07
 8  preparing for this deposition or in preparing to execute  15:07
 9  the affidavits.                   15:08
10      Again, the -- the core documents are the same,  15:08
11  so if there were a specific policy change that would be  15:08
12  relevant to one of these cases, I would probably know,  15:08
13  but I haven't specifically checked on that.   15:08
14      MR. CENTO:  Those are all of the questions I   15:08
15  have.                             15:08
16      MR. BROWN:  Okay.  I don't have any questions.  15:08
17      THE VIDEOGRAPHER:  That concludes this   15:08
18  deposition and is the end of media number one.  We are  15:08
19  going off the record.  The time is 3:06 p.m.   15:08
20          (Whereupon a discussion was off  15:08
21      the video record.)             15:08
22      MR. BROWN:  We will reserve.   15:08
23          (Whereupon the deposition   15:09
24      concluded at 3:06 p.m.)        15:09
25
```

Page 61

16 (Pages 58 - 61)

10    I, DENISE NORGLE, being first duly sworn, on oath, say that I am the deponent in the aforesaid
11 deposition, that I have read the foregoing transcript of my deposition taken on the 11th of February, 2015,
12 consisting of pages 1 through 67, taken at the aforesaid time and place and that the foregoing is a true and
13 correct transcript of my testimony so given.
14    _____ Corrections have been submitted
15    _____ No corrections have been
16    submitted
17    _____
         DENISE NORGLE
18
19
20
21
22
23
24
25
                                                    Page 62

1 transcript within 30 days or make other arrangements for
2 reading and signing thereof, this deposition transcript
3 may be used as fully as though signed, and the instant
4 certificate will then evidence such failure to read and
5 sign this deposition transcript as the reason for
6 signature being waived.
7    The undersigned is not interested in the
8 within case, nor of kin or counsel to any of the
9 parties.
10    Witness my official signature on this 27th day
11 of February, A.D., 2015.
12
13    _____
         Tracy Kerney, CSR, RPR
14    License No:  084-004282
15
16
17
18
19
20
21
22
23
24
25
                                                    Page 64

1 NORTHERN DISTRICT OF ILLINOIS )
2 EASTERN DIVISION           )
3 STATE OF ILLINOIS          )
4                  ) SS:
5 COUNTY OF C O O K          )
6
7    I, Tracy Kerney, Certified Shorthand Reporter,
8 do hereby certify that on the 11th of February, A.D.,
9 2015, the deposition of DENISE NORGLE, called by the
10 Plaintiff, was taken before me, reported
11 stenographically and was thereafter reduced to
12 typewriting through computer-aided transcription.
13    The said witness, DENISE NORGLE, was first
14 duly sworn to tell the truth, the whole truth, and
15 nothing but the truth, and was then examined upon oral
16 interrogatories.
17    I further certify that the foregoing is a
18 true, accurate and complete record of the questions
19 asked of and answers made by the said witness, at the
20 time and place hereinabove referred to.
21    The signature of the witness was not waived by
22 agreement.
23    Pursuant to Rule 30(e) of the Federal Rules of
24 Civil Procedure for the United States District Courts,
25 if deponent fails to read and sign this deposition
                                                    Page 63

17 (Pages 62 - 64)

[& - answer]

| & |
|---|
| **&**  2:6 31:17,17 |
| **0** |
| **084-004282**  64:14 |
| **1** |
| **1**  3:1 62:12 |
| **10**  3:10 |
| **11**  3:11 4:10 47:14 |
| **11th**  1:17 20:2 62:11 63:8 |
| **12**  3:12 |
| **13**  3:13 |
| **135**  20:1 |
| **14**  1:6 3:14 4:17 |
| **14th**  23:1 |
| **15**  3:15 58:18,22 |
| **16**  3:16 |
| **1681a**  58:18,22 |
| **1681e**  59:10 60:9 |
| **1681eb**  59:23 |
| **1681i**  59:10 60:25 |
| **17**  3:17 |
| **18**  3:18 |
| **19**  3:19 |
| **1970s**  55:25 |
| **1990**  39:20 |
| **1990s**  54:20 |
| **1:00**  4:10 |
| **1:02**  1:16 |
| **1:17**  15:24 |
| **1:29**  16:5 |
| **1:34**  19:18 |
| **1:45**  20:3 25:8 |
| **1:47**  26:15 |
| **1:56**  26:21 |
| **2** |
| **2**  1:6 3:1 |
| **20**  3:20 31:9 56:2 |
| **2000**  34:7 39:23 |
| **2000x**  21:16 |
| **2000y**  21:16 |
| **2002-2003**  27:6 |

| 2005  21:10 31:19 |
|---|
| 33:16,24 34:3,8,21 |
| 35:3,6,23,24 39:17 |
| 45:11,13,22 46:5,11 |
| 46:18 48:2,7,10,24 |
| 50:24 51:3,5,12,14 |
| 51:19,20 52:15 53:7 |
| 54:10,17 56:9,16 |
| 59:6 |
| **2007**  9:25 |
| **2010**  37:19,21 58:18 58:22,23 |
| **2011**  37:20,22 |
| **2012**  37:25 |
| **2013**  45:4,7 |
| **2015**  1:17 4:10 62:11 63:9 64:11 |
| **21**  3:21 |
| **22**  3:22 |
| **23**  3:23 |
| **24**  3:24 |
| **25**  3:25 |
| **27th**  64:10 |
| **280**  2:4 |
| **2:14**  20:1 |
| **2:52**  57:25 |
| **3** |
| **3**  3:2 |
| **30**  63:23 64:1 |
| **317**  2:8,9 |
| **32**  20:7 |
| **334**  2:3 |
| **35**  1:6 4:17 |
| **363-2257**  2:9 |
| **363-2400**  2:8 |
| **3:00**  58:6 |
| **3:06**  61:19,24 |
| **4** |
| **4**  3:2 |
| **434-6430**  24:11 |
| **4545**  2:7 |
| **46077**  2:8 |
| **46204**  2:3 |

| 5 |
|---|
| **5**  3:3 |
| **555**  1:15 4:12 |
| **6** |
| **6**  3:5 47:14,15,15 |
| **60661**  4:12 |
| **67**  62:12 |
| **7** |
| **7**  3:6 |
| **765**  2:4 |
| **8** |
| **8**  3:8 |
| **812**  24:11 |
| **9** |
| **9**  3:9 |
| **a** |
| **a.d.**  1:17 63:8 64:11 |
| **able**  24:5 44:4,12 52:24 |
| **absolutely**  49:4 51:16 |
| **access**  40:14 |
| **accessing**  43:13 |
| **account**  47:8,10,12 |
| **accuracy**  30:13 41:8 54:13 55:22 |
| **accurate**  63:18 |
| **accurately**  50:7 |
| **act**  17:22 18:12,23 27:5,5 30:4,7,12 35:11 41:6,18,23 55:24 58:25 60:25 |
| **activities**  11:12,23 12:21 13:17,21 20:15 32:17 47:23 |
| **activity**  12:1,12,23 13:1,4 18:22 |
| **acts**  32:10 |
| **actual**  10:3 44:11 |
| **adams**  1:16 4:12 |
| **add**  44:12 51:23,25 |

| a |
|---|
| **added**  28:23 36:7,16 37:8 43:9 47:4 51:6 52:16 |
| **additional**  52:13 |
| **address**  51:21 52:8 52:14 54:23 |
| **advisable**  18:22 |
| **advisement**  23:9 |
| **affect**  47:24 |
| **affidavit**  53:21 54:1 60:14 |
| **affidavits**  5:19 60:21 61:9 |
| **aforesaid**  62:10,12 |
| **age**  47:10 |
| **agencies**  43:23 59:16 |
| **agent**  28:7 35:16 47:3 |
| **agents**  35:15 44:16 44:17 47:21 |
| **ago**  8:17 52:8 |
| **agree**  4:7 52:18 |
| **agreed**  15:22 |
| **agreement**  63:22 |
| **ahead**  11:15 14:5 16:14 23:6 29:13 32:22 40:7 50:10 52:22 53:15 55:6 |
| **aided**  63:12 |
| **aimed**  18:21 54:12 56:1 |
| **algorithms**  50:18 |
| **allege**  55:20,22 |
| **allow**  22:10 27:1 |
| **allows**  43:22 |
| **amendments**  21:17 27:5 58:18,22,23,24 |
| **annual**  38:17 |
| **answer**  7:1,15 10:13 12:7 15:6,8 17:1,3 18:7 20:21 21:19,19 21:20 23:7 24:25,25 27:2,17 29:21 49:21 53:23 61:5 |

Page 1

[answered - certain]

| | | | |
|---|---|---|---|
| **answered** 22:11 | **authorized** 7:4,7 | **broader** 54:7 | **case** 4:14,15,17 7:4 |
| **answers** 63:19 | **automatically** 47:11 | **brought** 6:8 39:9 | 7:19,24 8:23 9:1,2 |
| **anticipate** 8:5,25 | **automation** 55:22 | 40:24 | 10:4 11:10,21 12:10 |
| 59:2 | 27:20 28:1 34:4 | **brown** 2:7 4:23,23 | 15:1,1 29:19,25 |
| **anticipated** 8:3 9:18 | 47:25 48:4 | 5:11,13 6:4 9:7,12 | 40:13,25 41:14 |
| **anticipation** 60:12 | **available** 28:5 39:14 | 9:15 10:12,14 11:1 | 42:22 49:2 50:22 |
| **anymore** 32:5 | 44:3 47:3 | 11:13 12:5 13:6,18 | 51:15 55:2,14 56:21 |
| **apologize** 33:19 | **avenue** 2:3 | 14:2,14,21 15:5,10 | 57:4,5,6 58:17,21 |
| **appear** 51:9 | **avoid** 18:14 | 15:15,17,22 16:11 | 59:1,3 60:15 64:8 |
| **applicable** 51:1 | **b** | 16:25 18:6 20:22,25 | **cases** 10:24 22:8 |
| **apply** 28:21 | | 22:14 23:2,24 24:15 | 31:4 39:7 59:9 |
| **appreciate** 23:24 | **b** 7:25 8:2 22:7 | 24:19,22 25:2 26:13 | 61:12 |
| **appropriate** 30:5 | **back** 9:13,25 16:4 | 26:25 27:16 29:10 | **catch** 33:19 34:23 |
| **approximately** 4:10 | 17:1,3,3 20:13 | 29:20 31:5 32:18,25 | **categories** 17:24 |
| **area** 24:11 28:25 | 24:13 25:3,6,7 | 33:2,4 35:7,25 | **categorize** 44:17 |
| 32:4 45:19 | 26:20 39:20,23 | 39:18 40:4 41:1,15 | 54:11 |
| **areas** 21:9 | 53:16 54:3 58:5 | 42:11 43:24 44:13 | **categorized** 25:15 |
| **argumentative** | **ball** 20:9 | 45:5 49:3 50:1,6 | **category** 12:14 |
| 13:18 44:13 50:7 | **based** 36:17 40:1,3 | 52:19 53:12,22 55:3 | 16:24 22:13 53:10 |
| **arising** 36:8,8 58:25 | 40:20,20 56:23 | 55:15 57:8,23 59:12 | 54:7 |
| **arrangements** 64:1 | **basis** 32:19 35:19 | 59:24 61:1,4,16,22 | **cause** 19:25 |
| **asked** 14:13 20:17 | 36:14 37:2 | **bruce** 32:7 | **caused** 51:9 |
| 20:19 21:13 25:12 | **beeping** 33:2 | **built** 51:6,19 | **cell** 4:4 |
| 41:10 49:24 53:5 | **began** 37:20 43:21 | **business** 25:22 | **center** 27:12 |
| 63:19 | **behalf** 2:5,10 | 27:24 28:1,3 29:5 | **centers** 38:20 |
| **asking** 6:21 9:17 | **believe** 5:14,22 6:1 | 35:13 47:6,9,25 | **cento** 2:2,2,4 3:4 |
| 10:5,6,7 12:18,19 | 16:15 19:14 23:10 | 49:15 50:17 | 4:22,22 5:8 6:16 9:8 |
| 14:23 15:7,9 41:25 | 25:20 31:20 32:5 | **bye** 24:21,21 | 9:14,16 10:22 11:8 |
| 53:24 | 39:19 41:16 45:6 | **c** | 11:15,18 12:8 13:10 |
| **assistant** 38:20 | 46:7 | | 13:22 14:5,11,16 |
| **associated** 44:2 | **best** 25:15 | **c** 2:1 8:9 20:13,24 | 15:2,7,13,16,19 |
| **associates** 2:6 8:8 | **better** 6:15 | 21:13 22:13 25:12 | 16:6,13 17:2,5 |
| 31:17 39:10 | **big** 37:5 44:11,21,25 | 63:5 | 18:16 19:13 20:10 |
| **assuming** 10:8 | **bill** 8:20,22 | **california** 32:10 | 20:12 24:20,24 25:5 |
| **assurance** 46:7 | **billing** 58:13,13 | **call** 24:11 54:21 | 25:9 26:12,22 27:13 |
| **assure** 30:13 55:21 | **binder** 50:20 | **called** 1:11 5:5 | 27:19 29:12,23 |
| **attach** 43:23 | **bit** 6:12 49:21 | 27:23 28:8 34:11 | 31:13 32:21 33:1,3 |
| **attending** 4:20 | **blenke** 7:25 | 52:2 63:9 | 33:12 40:6 43:2 |
| **attorney** 12:5 21:4 | **bradley** 32:11 | **calling** 19:14 | 45:2,8 49:7 50:2,9 |
| **attorneys** 4:19 | **break** 16:1 19:20 | **calls** 52:19 55:3,4 | 52:21 53:14 54:2 |
| 23:12 | 24:23 26:12,17 | **caption** 4:14 | 55:5 57:22 58:7 |
| **audio** 4:6 | 57:22 58:2 | **capture** 10:18 | 60:4 61:2,14 |
| **august** 45:7 | **brief** 15:25 19:19 | **captured** 10:1 | **centolaw.com** 2:4 |
| **authored** 61:6 | 26:16 58:1 | **carry** 20:9 | **certain** 29:6,15 |
| | | | 32:10 37:23 38:13 |

Veritext Legal Solutions
866 299-5127

[certain - couple]

46:20 47:8,10 48:8
59:9
certainly  20:12
22:10 39:20 46:10
46:24 51:4 52:25
56:23
certificate  64:4
certified  1:15 23:8
63:7
certify  63:8,17
cfpb  36:21 37:6,13
37:20,22,25 38:5,9
56:12
change  21:22,22,25
23:15 37:5 43:6,21
44:1,6,12,15,16,21
44:24 45:1,3 47:5
47:10 60:1,16 61:11
changed  22:6 35:6
35:23 40:20 43:11
44:7 46:19 47:13,14
50:24 51:11 53:7
56:9,19 59:6 60:3,7
changes  21:11 35:13
36:8,18 37:11,13
43:18 46:20 47:6,16
47:18,22 51:19,21
52:5,7,15 56:13,13
56:15,17,23,24
58:17,21,24 59:2,7
59:11,14,17,21
60:23 61:6,6
characterize  14:3
characterizing  50:8
charge  37:13
check  31:10
checked  61:13
chicago  4:12 38:19
childress  5:21 53:21
54:1 60:14
circuit  20:25 22:22
civil  1:12 63:24
claim  6:20 7:12,17
7:19 8:4,6,7 9:19,23
47:2 49:6 56:23

claims  6:8 11:10,21
11:21 12:10,10
38:22 40:24 41:14
49:1 55:2 59:3
clarify  29:3
classify  50:19
clear  21:1 35:17
47:1
client  12:5 55:14
client's  23:18
close  31:9
code  24:11 43:9,10
56:23
codes  47:2,4
cogan  32:6
combinations  48:15
come  38:19 49:19
56:4
coming  24:5
commencing  1:16
commission  36:20
37:24 56:12
communicating
46:23
communication
30:5
compel  23:9,13,22
compelled  53:2
compendium  36:7
compilation  50:16
complaint  6:7,18
7:10
complete  63:18
completely  6:12
38:13
compliance  17:21
18:2,13 26:3 29:17
29:18 30:2 33:10,14
35:20 36:5,10,12
37:3 39:25 40:23
41:13,17,24 42:6,13
53:3,16,25 54:8,11
55:23 56:14 60:9
compliant  36:12

comply  18:4
computer  63:12
concerned  15:19
concluded  61:24
concludes  61:17
conclusion  52:20
55:4
conduct  11:12,23
12:1,4,12,20,23
13:1,4 32:17 42:15
57:2,4
conducted  12:3 60:5
60:11,13
conducting  13:13
conducts  20:15
conference  24:4
conferences  24:9
confident  54:16
confidential  53:1
confirm  44:23
confused  49:21 50:4
connection  26:6
46:22 48:19 60:20
consider  58:12
considered  52:4
consistent  37:17
consisting  62:12
constantly  35:11
consumer  8:8 10:18
27:7,23 28:7,23
30:18 33:22 34:18
37:11,13 38:20
41:22 42:20 43:22
45:25 46:22,23,25
47:7 48:20,23 49:17
52:3 53:5,9 55:18
56:21,22 57:10
59:16
consumer's  18:24
27:9 30:3 44:17
49:18
consumers  10:1
28:5 46:9 48:15
contain  29:19,24

contents  21:8,24
continue  4:6
continuing  50:3
conversations  4:3
convey  39:3 43:7
44:10
conveying  47:3
copy  46:1
core  37:15 42:24
47:24 51:18 55:19
56:3,9 61:10
corporate  14:6
correct  15:10 25:25
46:2 62:13
corrections  62:14
62:15
correctly  14:3
costs  23:21
counsel  4:13,23 5:11
10:23 11:2,9,12,20
11:23 12:2,9,11,14
12:20 13:3 14:9,24
17:25 19:9,12 20:15
20:16 21:15,18
22:19 25:11,21 26:5
28:12 32:1,9,10,16
32:17 33:9,16,24
34:2,7,10,14,16,20
35:2,5,23 38:11,14
38:15,18 39:1,5,9
40:2,11,12 43:17
45:10,13,18,22 46:4
46:10,18 48:2,7,9
48:19,22 50:3,24
53:7 54:10,16,17,20
57:4,11,13,14,16,17
58:9,11,14 59:5
64:8
counsel's  26:8
counsels  11:5
country  32:2
county  63:5
couple  8:17 38:20
43:9,12,19

[course - drive]

| | | | |
|---|---|---|---|
| **course** 21:3 23:5 | **deal** 21:9 | **describing** 14:19 | 44:3,12 47:7,8 |
| **court** 1:1 4:16,25 | **december** 23:1 | **designed** 51:21 | 51:10 53:5 |
| 7:7 9:12 11:14 | **decide** 20:9 | **details** 55:10 | **district** 1:1,2,13 |
| 15:18,20 17:1 19:4 | **decisions** 59:15 | **determination** 8:22 | 4:16,16 63:1,24 |
| 19:25 20:6,22 21:6 | **deeply** 42:21 | 21:23 | **dived** 42:21 |
| 22:24 23:3 24:1,16 | **defend** 48:22 56:5 | **determine** 18:11 | **division** 63:2 |
| 24:21 25:2 59:9,10 | **defendant** 1:8 2:10 | 21:4 28:22,24 42:22 | **document** 20:7 |
| **court's** 5:18 23:25 | **defending** 12:24 | 60:2,6 | 21:18 26:9 27:14 |
| **courts** 1:13 63:24 | 22:19 39:7 40:13 | **determined** 56:20 | 28:10 29:2 35:1 |
| **covers** 47:21 | 57:5,6,11 58:10 | **determining** 41:19 | 36:23 40:1,3,10 |
| **create** 38:7 | **defense** 6:8,19 7:11 | 41:20 | 41:17 48:13 52:17 |
| **created** 27:4 34:16 | 7:17,24 8:7 10:4,6 | **different** 18:20 | **documentation** |
| **credentialing** 54:14 | 10:20 12:16 13:13 | 28:21,21 29:5 36:4 | 13:15 14:7 17:15 |
| **credit** 17:22 18:12 | 13:15,19 14:10,24 | 41:3 48:15,16,18,18 | 19:8 25:17,20 26:1 |
| 18:23 27:5 28:24 | 17:25 19:12 26:7 | **digits** 52:12 | 26:23 27:3,7 28:14 |
| 30:4,6,11 41:5,18 | 28:12 31:25 33:8,23 | **directing** 57:16 | 28:19 33:8,23,25 |
| 41:23 46:1 49:13 | 34:10 38:18 39:6,14 | **disagree** 15:13 | 34:3,10,13,22,24,25 |
| 51:2,3,6,7,9 55:24 | 42:23 43:1,17 54:17 | **disclose** 21:8 | 35:5,8,10,12,18 |
| 58:25 60:25 | 55:8,18 57:14 58:16 | **disclosure** 37:14 | 36:1,19 39:13 40:15 |
| **crs** 25:16 26:23 | 58:20 59:2 | 42:21 | 43:15,15 44:8 45:10 |
| 27:12 34:9,19,25 | **definitely** 33:23 | **disclosures** 45:17,25 | 46:17 47:5,16,20 |
| 35:1,4,9 45:9,9 | 34:20 48:23 | **disconnecting** 6:13 | 48:6,9,12 49:12,15 |
| 46:17 | **definition** 22:10 | **discoverable** 52:18 | 49:17 50:16 52:16 |
| **crumlin** 8:8 | 43:10 | 52:24 | 52:23 56:18,18,22 |
| **csr** 64:13 | **delete** 21:14 | **discovery** 14:13,20 | 57:10 60:17,22,23 |
| **currently** 31:15,16 | **denise** 1:10 3:3 4:18 | 15:1 22:18,22 31:3 | **documented** 41:23 |
| **cv** 1:6 4:17 20:1 | 5:4 62:10,17 63:9 | 31:10 | **documenting** 29:4 |
| | 63:13 | **discreet** 47:23 | **documents** 5:15 6:2 |
| **d** | **department** 42:13 | **discussing** 59:22 | 14:23 15:11 19:10 |
| | **departments** 57:12 | **discussion** 19:23 | 22:11 27:11 29:4,4 |
| **d** 3:1 8:2 | **deponent** 62:10 | 61:20 | 33:11 34:1,14 39:22 |
| **dan** 8:1 | 63:25 | **dispute** 9:6 18:25 | 39:25 40:8,10,16,19 |
| **data** 19:3,5,7 28:22 | **deposition** 1:10 4:6 | 25:21 27:20,25 28:4 | 40:22 43:5,23 44:19 |
| 28:22 42:13,16,18 | 4:11 5:10 7:3,4 11:5 | 28:6,9 30:3 34:4,13 | 44:22 46:18,21 |
| 43:8,13 44:21 49:14 | 20:4 22:12 24:2 | 41:5,11,17,20 42:3 | 48:18 50:13 56:4,25 |
| 52:9,11 54:14,22,23 | 60:12 61:3,8,18,23 | 42:5 43:5,8,14,20 | 57:9,17 60:2,6,8 |
| 54:25,25 55:13 | 62:11,11 63:9,25 | 43:23 44:5,18,24 | 61:7,10 |
| **database** 42:19 | 64:2,5 | 45:15,16,21 46:16 | **dodd** 36:18 37:6,18 |
| **date** 4:9 6:6,17,22 | **depositions** 1:14 | 46:23 47:2,4,11,25 | 37:19 58:23,25 |
| 6:24,25 7:9,18 | 10:24 24:3 | 48:4 49:16 53:9,10 | **don** 32:11 |
| 39:13 47:11 | **describe** 21:14 | 55:23 | **draft** 26:8 |
| **dates** 47:12 | 47:18,19 49:12 | **disputed** 42:16 | **drafted** 33:25 34:5 |
| **day** 1:17 31:9,9 | 50:13,14,14 | **disputes** 9:3,21,25 | 35:9,10 36:6 45:23 |
| 38:20 64:10 | **describes** 28:20 | 10:10,11,17,17,25 | **drive** 2:7 |
| **days** 22:25 41:20,21 | 48:14 | 11:7 27:21,23 30:18 | |
| 64:1 | | | |

Veritext Legal Solutions
866 299-5127

[dubnow - going]

| | | | |
|---|---|---|---|
| **dubnow** 8:2 | **examined** 5:6 63:15 | **feedback** 33:4,9 | **framing** 22:12 |
| **duly** 5:3,5 62:10 | **examining** 21:1 | 35:15 39:1 | **frank** 36:18 37:6,18 |
| 63:14 | **example** 15:3,12 | **fees** 23:12 | 37:19 58:23,25 |
| **duties** 58:10 | 19:1,2 25:20,24 | **field** 44:18 | **free** 28:8 44:18 |
| **e** | 36:3,18 37:10 38:8 | **file** 22:24 28:22,23 | **freeze** 37:11 |
| | 42:12 43:25 44:6 | 46:1 48:23 49:14,14 | **friendly** 46:25 |
| **e** 2:1,1 3:1 7:25,25 | 47:7 48:16 51:23 | 51:2,6,7,9 | **frivolous** 41:20 |
| 8:1 34:12,12 43:7 | 54:13,18 59:22 | **filed** 7:20 23:4 41:9 | **front** 19:4 |
| 43:20,21,22 63:23 | **exclusively** 14:15,18 | **filing** 6:6,17,22,24 | **ftc** 37:6 |
| **earlier** 14:3 25:12 | 22:18 | 6:25 7:10,18 | **full** 52:10 |
| 29:11 32:19 50:8 | **excuse** 27:16 | **find** 23:19 24:25 | **fully** 64:3 |
| 53:13 55:16 | **execute** 61:8 | **finding** 20:23 | **furnisher** 19:3,6,7 |
| **early** 37:21 | **executed** 5:19 | **finish** 24:2 | 42:16 43:8,13 44:2 |
| **eastern** 63:2 | **exhibits** 3:5,7 | **firm** 32:4,7,9 39:12 | 44:6,21 54:14,22,24 |
| **easy** 35:14 | **existed** 51:3,5 | 39:14 | 55:13 |
| **eb** 60:10,11 | **existence** 22:15 | **firm's** 32:12 | **furnishers** 42:14 |
| **effect** 22:5 | **exists** 22:20 32:5 | **firms** 31:8,14,16,20 | 43:16 54:25 |
| **effort** 37:5 44:10 | **expect** 21:20 | 31:21,23,24 32:3 | **further** 23:8,12 |
| **eileen** 8:14,15 | **extent** 9:24 24:13 | **first** 5:5 7:9 62:10 | 63:17 |
| **either** 28:7 36:8,15 | 53:2 56:10 | 63:13 | **fuzzy** 27:22 |
| 38:19,25 40:9 50:13 | **f** | **five** 57:22 | **g** |
| 52:9 55:20 60:14,18 | | **flushed** 55:9 | |
| **electronically** 40:9 | **fact** 27:4 33:25 | **focus** 41:12 | **g** 2:2 |
| 40:11 | 35:11 47:20 | **following** 16:2 19:21 | **general** 58:8 |
| **elicited** 33:24 | **facts** 42:22 | 26:18 39:16 58:3 | **generally** 11:3 21:2 |
| **employee** 40:15 | **failed** 55:20,22 | **follows** 5:6 | 24:3 42:25 50:11 |
| **employees** 8:3,6 | **fails** 63:25 | **foregoing** 62:11,12 | **getting** 54:24 |
| 9:18,20,24 10:3,8,9 | **failure** 64:4 | 63:17 | **give** 15:3 32:15 |
| 40:13 57:18 | **fair** 17:22 18:11,22 | **form** 9:7 10:12 11:1 | 33:15 61:5 |
| **encompasses** 14:25 | 27:5 30:4,6,11 41:5 | 11:13 12:5 13:6,18 | **given** 7:3 11:24 |
| **enhancement** 45:7 | 41:18,23 55:24 | 14:2,14,21 15:5 | 21:15 23:17 35:23 |
| **ensure** 41:7 | 58:25 60:25 | 16:11,25 18:6 26:25 | 45:10,12 50:3 53:6 |
| **enterprise** 18:20 | **fairly** 23:20 44:21 | 27:16 29:10,20 31:5 | 54:10 58:9,10 59:5 |
| **establish** 18:11 | **fall** 12:14 20:6,23 | 32:18 35:7,25 39:18 | 62:13 |
| **estimate** 6:5 43:19 | **familiar** 38:1 57:17 | 40:4 41:1,15 42:11 | **giving** 60:14 |
| **evaluating** 48:20 | **far** 15:19 46:16 | 43:24 44:13,18 45:5 | **go** 4:7 6:13 11:15 |
| **everybody** 39:12 | **fax** 2:9 | 49:3 50:1,6 52:19 | 14:5 15:19 16:14 |
| **evidence** 64:4 | **fcra** 2:4 30:22,22 | 53:12,22 55:3,15 | 19:16 23:6 24:7,13 |
| **evoked** 49:13 | 33:14 54:6 55:25 | 57:8 59:12,24 61:1 | 24:18 28:5 29:13 |
| **exact** 6:25 | **february** 1:17 4:9 | **forward** 6:22 24:7 | 32:22 40:7 46:22 |
| **exactly** 7:19 | 20:2 62:11 63:8 | **forwarding** 44:23 | 50:10 52:22 53:15 |
| **examination** 1:11 | 64:11 | **four** 52:12 | 55:6 57:18 |
| 3:4 5:7 38:1,4,9 | **federal** 1:12 36:20 | **frame** 27:6 37:22 | **goes** 48:12 57:15 |
| **examine** 21:2 | 37:24 56:12 60:24 | **frames** 30:5 | **going** 6:22 9:25 12:6 |
| | 63:23 | | 15:5,10,15,23 16:25 |

[going - lawsuit]

19:17 23:5 24:25
26:14 27:1 37:22
39:20,23 49:11
57:24 61:19
**good** 24:7,17 43:25
**great** 24:16
**group** 32:15 39:7
50:13
**guess** 20:8 29:3 43:8
44:14
**guessing** 29:14
**guidance** 23:25
**guys** 24:7,17

**h**

**h** 8:1
**halvorsen** 8:1
**handle** 25:4 31:9
47:7
**handled** 11:10 12:10
**handles** 11:21
**handling** 18:24 39:8
41:5,11 42:3,5
45:16,21 46:16
49:17
**happen** 43:11 52:5,5
**happened** 45:4
48:20 59:7
**headquarters** 38:19
**hear** 6:10 33:3
**held** 4:11,15
**help** 25:16 26:23
27:12 35:10 45:10
46:17 48:21
**hereinabove** 63:20
**highly** 52:25
**historically** 52:9
**hobson** 5:23 60:15
**hold** 19:15
**honor** 20:12,25
22:14 24:15,20
**hoping** 41:12
**hour** 1:16
**hours** 6:5

**huffman** 20:2
**huge** 44:16
**hundred** 26:3
**hundreds** 29:4,17
53:3 54:8

**i**

**identification** 42:20
48:15
**identified** 22:16
27:22 55:7,12
**identify** 4:20 10:2
15:9 16:7 20:19
21:7,21 25:13,18
36:23 49:8,25
**identifying** 22:3,4
22:20
**illinois** 4:12 63:1,3
**image** 44:3,4 45:7
**images** 44:12 45:3
**imagine** 30:1,13
48:14 49:16 54:19
**imaging** 56:24
**immediately** 49:19
**implementing** 43:21
**improper** 23:10
**improve** 35:14
**include** 8:8 12:23
55:18
**included** 32:15
**includes** 27:8
**incremental** 35:12
44:20 47:16 51:21
**indiana** 1:2 4:17
**indianapolis** 2:3
**indicate** 57:12
**indirectly** 42:15
**individual** 11:6
**individuals** 10:16
**industry** 36:9
**information** 8:4,6
9:22 10:7,10 12:23
13:15 21:3,5 29:19
29:24 30:6 37:23
42:16 51:6,9 53:1,1

**initially** 27:4
**input** 26:8 33:24
**inputs** 28:21
**instant** 64:3
**instituted** 48:4
**instruct** 12:6 15:6
**instructed** 20:21
**instruction** 11:25
**instructions** 11:11
11:22 20:14 22:1
58:8
**intend** 58:16,20
**intended** 28:6
**intent** 22:12
**interest** 23:19
**interested** 64:7
**interface** 57:13
**interfere** 4:5
**internal** 33:8
**internally** 25:16
**internet** 28:5 40:19
**interpreting** 23:16
**interprets** 18:12
**interrogatories**
63:16
**inventory** 36:17
37:9 53:25
**investigating** 44:5
**investigation** 9:19
41:21 42:15
**investigators** 9:2,5
**involve** 9:2
**involved** 6:8,19 7:11
7:17,22,24 8:7,14
8:16,20,22 9:1
10:20 29:1 31:3
**issue** 21:20 23:21
**issued** 37:25 38:5
59:15
**issues** 20:11 21:1
22:8 42:13 59:9
**item** 20:7

**j**

**job** 60:17
**john** 2:2 4:22 7:25
20:10 24:22 32:25
**judge** 15:14 19:14

**k**

**k** 7:25 8:11 63:5
**keep** 24:17
**kerney** 1:15 5:1 63:7
64:13
**kin** 64:8
**kind** 38:22
**kinds** 10:23
**know** 6:25 7:1,15,16
8:18,21 9:4 10:2,15
11:2 12:3 15:17
21:23 24:10,12
25:25 26:4 27:18,24
28:11,11 29:5,15
30:20,24,25 31:6
32:24 33:7 34:3
36:22 38:10 39:6
40:17,18 41:10 44:2
45:12,17 46:6 47:21
48:3 50:19 51:8,11
53:2,18,19 54:14
55:7,9,20 56:5,19
57:15,18 58:12,24
61:12
**knows** 27:17 29:21

**l**

**l** 7:25 8:1,9
**language** 11:14
46:25
**large** 56:25
**late** 23:15 37:21
**law** 2:2 35:13 36:9
36:11,18,19 37:10
58:17,21 59:18
**laws** 60:24
**lawsuit** 41:9 42:10
42:18 56:5

Page 6

[lawsuits - object]

lawsuits  49:18 55:20
lawyer  32:6,11
lawyerly  24:7
lawyers  39:12
legal  4:9 6:7,19 7:11
  7:16,21,24 52:19
  55:4
letter  34:12
letters  46:9,11,22
license  64:14
linda  8:1
line  15:18,21 19:14
link  44:4
linking  45:6 56:24
litigation  11:12,23
  12:1,3,12,20,23
  13:1,4,17,20,20
  14:10,25 18:1,5,10
  18:15 20:15 22:20
  27:15 28:10 29:2
  30:19,23 31:2 32:17
  33:8 36:8 38:12
  39:15 40:17 43:1
  45:19 46:12 53:18
  54:15 55:9,18 56:7
  57:3,11,14 58:10
  59:8,14,15,18
little  6:12 8:14,15
  27:21 49:21
live  45:7
liz  8:10
llc  1:7 2:2 4:15
local  32:1,10
located  4:11
logic  28:20 52:4
long  6:4 24:6 38:16
  39:16 42:18
longstanding  12:2
  31:12
look  54:3
looked  53:16
looking  13:13
looks  36:4
lost  33:5

lot  33:7 36:19 44:19
  45:19
luck  24:17
luckman  32:7,8
lynn  8:11 28:25

m

m  8:9,11
magistrate  20:2
magistrate's  22:25
magnitude  44:15
maintain  54:13
maintained  36:14
  40:9
maintaining  54:12
manner  11:11,22,25
  12:11,19,22,25 13:3
  13:12 20:14 22:4,13
  24:7 32:16
manual  15:4 21:15
  22:7,7,16 25:15
  27:22 33:6 36:14
  38:1,5,9 40:2,3 49:8
  49:15,23 50:5,12,12
  50:15,19
manuals  12:11,13
  12:15,15,19 13:23
  13:24 14:17,23 15:9
  16:7,9,10,15,16
  20:14,18,19,20 21:7
  21:10,12 22:3,18,21
  25:10,13,14,18 31:1
  32:14,15 33:13 34:6
  34:17 35:22 36:11
  37:1 40:23 41:13
  42:6 43:20 48:1,7
  48:25 49:1,25 50:21
  57:1,6 58:9 59:4,4
  59:11,21
mark  32:6
marked  3:7
match  49:14
matches  28:22 52:9
matching  28:20,21

material  44:19
materials  14:8
  16:18,21
matter  6:1 10:21
  12:17 20:1 23:3
  26:7 42:24
matters  5:20 32:9
  32:11
maximum  6:14
  30:13 41:7 54:13
  55:21
mean  12:25 13:2
  50:4
mechanics  18:21
media  61:18
meeting  5:12,13 6:4
  38:21
meetings  38:24
  39:21
members  6:7,18
  7:10,16,21,23
mention  29:17
mentioned  27:25
  30:18 34:4 46:21
  53:8 54:8 59:19
met  5:11
michael  2:12 4:8
microphones  4:2,5
middle  20:4
mind  49:20
minute  57:22
mischaracterize
  40:5
mischaracterizes
  29:10 32:19 53:13
  55:16
mismatch  52:2,4
missed  38:17
mitigate  38:24
mitigation  33:9
moment  8:13 17:17
  26:11 30:16 33:10
  42:4 57:21
months  47:12,14,15

motion  23:8,12,22

n

n  2:1 3:1 7:25 8:1,2
  8:9,9,11
name  4:8,17 21:14
  22:16 32:12 33:11
  40:17 49:9 52:1
named  32:6,11
names  51:23,24,25
  52:3
naming  22:21
nature  21:21 23:15
  24:2
necessarily  10:2
need  10:2 17:2 20:9
  23:7,18 24:11,13
  36:3 57:19 60:1
needed  44:9
never  37:16
new  36:6,7,16 37:8
  37:10,12 38:7 39:4
  39:10 43:9 47:4
  56:23
nickname  48:17
  51:24
nonexistence  22:16
norgle  1:10 3:3 4:18
  5:4 62:10,17 63:9
  63:13
north  2:3
northern  63:1
northwestern  2:7
note  4:2 7:18
notes  27:21
number  24:11,13
  28:8 37:21 38:15
  52:8,10,10,13 53:6
  54:11 61:18
numerous  17:20

o

o  8:1,2,11,11 63:5,5
oath  62:10
object  9:7 10:12
  11:1,13,13 12:5

[object - potentially]

| | | | |
|---|---|---|---|
| 13:6,18 14:2,14,21 15:5 16:11,25 18:6 26:25,25 27:16 29:10,20 31:5 32:18 32:18 35:7,25 39:18 40:4,4 41:1,15 42:11 43:24 44:13 45:5 49:3 50:1,6,6,7 52:19 53:12,12,22 55:3,15,15 57:8 59:12,24 61:1 | 45:9,10 46:17 47:25 48:4 **open** 41:21 **operating** 13:25 **operations** 17:23 18:4,17,18,20,24 33:15 35:21 37:20 **operator** 11:6 **operators** 27:8,9 45:16 47:22 **oral** 63:15 | **page** 3:2 **pages** 48:13 62:12 **pair** 51:23,25 **pairs** 52:2 **paper** 36:14 **paragraph** 20:24 21:13 25:12 **part** 22:11 32:2 34:18,25 58:9 60:17 **partial** 52:8 **participating** 10:4 | **plaintiff** 1:5,11 2:5 4:13,22 11:5,10 63:10 **plaintiff's** 9:3,21 10:23 11:2,7 49:13 **platforms** 36:2 40:21 **play** 56:4 **please** 4:2,4 9:13 11:17 16:5 19:16 25:8 26:21 58:6 |
| **objection** 14:2 22:3 22:8,25 23:4,5,10 23:20 61:4 **obligations** 17:21 18:14 41:18 **observe** 36:9 **obviously** 22:6 23:17,23 | **order** 5:18 7:3,13 20:13 22:25 23:6,16 23:16,17 25:12 **ordered** 23:11 **oscar** 34:12,12 43:7 43:20,21,22 **outcome** 44:24 **outside** 11:9,12,20 | **particular** 9:1 20:5 32:1 36:10 38:10 39:7 42:24 48:20 **particular's** 48:22 **particularly** 38:12 39:5 52:11 **parties** 4:7,21 20:3 64:9 | **plowing** 24:17 **point** 8:5 47:14 **policies** 12:15 13:14 13:24,25 14:7 16:16 16:22,23 17:6,8,9 17:11,13,18,20,22 18:2,8,14,17,19 |
| **occurred** 52:15 56:13,16 60:17 **office** 8:9,10 **official** 64:10 **oh** 33:3 | 11:23 12:9,11,14,20 13:3 14:9,24 17:25 18:5 19:8,12 20:15 20:16 22:19,21 25:11,21 26:5 27:1 | **partner** 32:6 **parts** 27:14 33:22 **party** 38:8 **passed** 8:17 36:19 37:7,19 | 19:10 26:4 29:18,18 30:1,2,7,10,17,21 31:1 33:13 34:1 35:20,21 36:5,6,12 36:15,16,17 37:3,9 |
| **okay** 6:14 7:9,15 9:14,15 10:5 14:17 15:13 17:13,18 18:24 23:3 24:1,14 24:16,18,21 25:23 29:24 33:13 36:10 49:8 54:5 55:11 59:20 61:16 | 28:12 31:8,14 32:8 32:15,16 33:16 34:2 34:7,14,15,20 35:2 35:23 38:11,14,15 39:1,5,9 40:2,11,12 45:10,12,18,21 46:4 46:9,18 48:2,7,9,19 48:21 50:3,24 53:7 | **passes** 37:10 **pc** 2:6 **pdf** 40:10 43:23 **pennsylvania** 8:9 **perform** 18:21 **period** 21:16 **periodically** 39:9 46:25 47:6 | 37:15 38:3,7,10,21 39:11 41:4,6,8,11 41:24 42:13,18,19 42:23,25 47:24 53:4 53:4,6,8,9,10,17,25 54:5,8,9,12,18,23 55:1,8,12,13,19 56:1,3,14 |
| **older** 47:10 **oldest** 54:18 **onboarding** 54:14 54:24 55:13 **ones** 29:24 33:14 48:11 53:17 56:8 **ongoing** 35:19 37:2 | 54:10,16,19 57:3,11 57:13,14,16,17 58:9 58:11,14 59:5 **overrule** 22:3 23:5 **oversight** 38:8 | **periods** 22:5,5 **permissible** 22:22 **person** 23:6 **persons** 10:25 **perspective** 20:11 **pertaining** 1:14 16:16 17:21 45:17 | **policy** 37:8,12,14 39:4 41:16,17 55:1 61:11 **portion** 45:14 46:16 56:25 **portions** 29:6 34:15 34:19 35:1,4 45:12 |
| **online** 25:16,21 26:23 27:12,20,21 27:23,25 28:4,5 34:4,19 35:1,9 36:14,17 40:1,2,14 40:14,19 41:12 42:6 | **p** 2:1,1 **p.m.** 1:16 4:10 15:24 16:5 19:18 25:8 26:15,21 57:25 58:6 61:19,24 | **philadelphia** 32:4 **phone** 6:12 33:5 **phones** 4:4 **pick** 4:3 **place** 4:4 56:2 62:12 63:20 | 45:15,17 46:3,6 **position** 21:5 22:15 **possible** 30:13 41:7 54:13 55:21 **possibly** 8:11 **potentially** 42:14 47:21 48:14 |

Centered above the "p" section header:

**p**

[practice - relationship]

practice  39:17
practices  35:13 36:9
   47:23 50:14 58:13
prager  2:12 4:8
precedent  22:23
prefer  24:24
premature  22:9
premises  40:12
preparation  7:2
prepare  5:9 57:13
preparing  60:20
   61:8,8
present  2:11 4:19
pretty  37:17 41:8
   44:11 54:16
previously  5:19
   37:24 56:10
price  31:17 37:11,13
primary  17:24
   31:16 38:18
prior  33:24 34:2,7
   34:11,20 35:2 40:5
   45:10,13,22 46:5,10
   46:18 48:2,7,10,23
   50:24 51:3,5,14,19
   54:10,17 59:6 60:14
   61:3,3
private  4:3
privilege  12:6
probably  11:4 17:23
   19:10 25:15 30:10
   31:9 34:13 41:6
   45:15,20,22 49:19
   54:19 56:2,15 61:12
problem  24:4,12
procedure  1:13
   63:24
procedures  12:15
   13:14,24 14:1,7
   16:16,22,23 17:7,9
   17:10,11,13,18,21
   17:23 18:2,3,9,14
   18:18,19 30:2,7,11
   30:12,17,21,22
   33:13 34:1 35:21,21

36:6,6,13,17 37:3
   37:15 38:3,7,10,22
   39:11 41:7 42:23,25
   53:17,25 54:6,7,12
   55:19,21 56:1,3,14
proceed  5:2 16:5
   25:8 26:21 58:6
proceedings  16:2
   19:21 26:18 58:3
process  19:2 31:3
   35:16 44:20 55:23
   57:15
processed  9:3,6,21
   9:25 10:8,9,16,25
   11:6
processes  47:24
   50:14
processing  10:17
   19:8 27:9 28:4 30:3
   30:18 34:13 43:5,20
   53:5
produce  53:2
produced  14:19
   22:18 27:14 28:10
   29:2,7,9,16 30:19
   30:23 31:2,7
proposed  20:7 38:25
proprietary  21:3,5
   28:20 50:18 52:25
protect  23:18
provide  14:9,12,17
   14:23 17:25 20:19
   25:21 58:14
provided  11:9,20
   12:9,13 19:8,11
   20:16,18 21:10,18
   22:19 25:11 26:5,6
   26:8 34:7,10,13,15
   35:2,5 48:1,7,9,19
   50:23
provisions  30:12
public  52:11
publish  39:4,4
published  37:12

purpose  14:18
purposes  19:12
   22:19
pursuant  1:11,12
   63:23
put  24:12 36:13
   54:7

q

quality  46:7 54:24
question  6:10,23,24
   7:1 9:10,17 11:17
   14:22 15:8 16:12
   17:4,6 18:7 20:4,5
   20:17,21 21:7,13,17
   21:25 22:6 24:3,4
   24:10 25:1,3,5,12
   33:20 34:23 41:3,11
   42:6 49:11,24 53:23
   58:19
questions  20:5 23:7
   24:1 61:14,16 63:18
quite  48:8

r

r  2:1,7 8:1,9,11
raise  58:16,20
raising  59:2
rarely  37:7
read  7:6,12 9:12
   17:1,3,3 25:3 62:11
   63:25 64:4
reading  64:2
really  6:10 47:23
   50:4
reason  20:23 30:25
   31:6 64:5
reasonable  30:12,22
   41:7 54:6,12 55:21
   56:6
recall  32:5,11,12
   34:5
receive  21:5 37:23
received  37:24
recognize  48:16

record  4:1,7 15:20
   15:23 16:4 19:16,18
   19:24 24:14 25:6,7
   26:15,20 52:11
   57:25 58:5 61:19,21
   63:18
recording  4:6
records  10:1
redrafted  35:17
reduced  63:11
refer  10:20 13:13,20
   20:13 25:16,25 27:9
   36:20 40:8 47:22
referee  24:3
reference  55:19
references  36:19
   37:6
referred  63:20
referring  14:6 16:15
   17:11 25:14 27:12
   48:25
refers  50:12
reflect  35:13 36:2,7
   36:11 37:12,14,22
   38:4 43:18 56:11,24
regarding  17:23
   30:12,22 34:4 38:8
   51:13 54:6 59:10
regularly  32:24
relate  30:2,3,17,21
   32:16 53:4 54:6
   55:14 59:22 60:24
related  11:11,22
   12:11,19 20:14
   37:18 44:3 45:3
   53:9,10,10 57:6
relates  41:17 60:23
relating  45:15 46:6
   59:17
relations  8:8 10:1,18
   27:8 33:22 34:18
   49:17 56:22 57:10
relationship  12:2
   31:12

Veritext Legal Solutions
866 299-5127

[relevant - sorry]

**relevant** 8:4 9:19,22
10:7,10 12:16 29:19
29:24 30:8,11,14
38:12 39:6 40:24
41:8,13 42:10,15,17
42:23 43:1 49:1,5,9
49:12,18 50:22 51:5
51:14 52:17 53:18
54:15 55:2,8 56:7
56:21 59:1 60:8
61:12
**rely** 12:24 31:7
**remained** 37:17
**remember** 10:17
14:8 38:16 39:21
48:3 52:1
**remotely** 4:20
**rephrase** 38:6
**replacing** 56:12
**replicate** 28:7
**replied** 53:8
**report** 28:24 51:3
**reported** 63:10
**reporter** 1:15 4:25
9:12 17:1 19:4 25:3
63:7
**reporting** 17:22
18:12,23 27:5 30:4
30:6,12 41:6,18,23
43:22 55:24 58:25
59:16 60:25
**reports** 37:23
**represent** 4:21 32:1
**representing** 4:8 5:1
**request** 27:10
**requested** 14:20
15:1 28:25
**requests** 46:1
**required** 18:11,22
21:14 30:4,6 42:20
**requirements** 16:17
16:19,23 17:7,9,12
17:14 18:13 25:22
28:1 34:6 36:7 41:5
41:22 48:1 55:23,24

56:1 58:13
**reserve** 61:22
**resolve** 24:8
**resources** 27:8
39:13
**respect** 23:21 41:19
42:3,5 50:21 56:17
**respectfully** 22:14
**respond** 41:22
**responded** 20:18
**response** 25:11 38:8
49:24 53:8
**restrictions** 20:6
**result** 36:4 59:14
**retained** 42:19
**return** 28:24
**review** 5:15,17 6:2
38:25 39:11 60:2,6
60:11,13,19,22
**reviewed** 5:18,18
7:3,12 28:12 33:7
33:23 34:2,20 35:11
38:11 48:23 50:25
54:15,17,19 60:16
60:18,19 61:6
**reviews** 39:22
**revised** 36:11
**rewrite** 37:16
**richard** 1:4 4:14
**rieger** 8:24,25
**right** 5:22 6:17 7:4
9:5,9 10:25 14:1
21:6 23:23 24:16
25:2 32:13 40:15
43:4 44:11,12 50:21
53:3 60:1
**risk** 38:24
**romanowski** 8:11
28:25
**room** 4:20 25:1
**routines** 28:21
**rpr** 64:13
**rule** 47:9,14 52:7,24
63:23

**rules** 1:12 28:3,6
29:5 47:6 48:16,18
48:21 49:5,13,16
50:17 51:1,4,8,11
51:13,18,20 52:5,13
63:23
**rulings** 59:8,9

**s**

**s** 2:1 8:1,11
**sample** 46:8,21
**sanctions** 23:11
**saying** 17:8
**says** 15:14 47:9 52:2
**scenario** 48:14,21
**scenarios** 52:14
**schuckit** 2:6 31:17
**schuckitlaw.com**
2:9
**scope** 20:24 27:1
**screen** 27:10 36:3,4
40:9 43:12 44:1,7,8
**screens** 44:7,11
**second** 19:15 27:22
**sections** 45:20 59:18
**security** 37:11 52:8
52:10,10,12
**see** 15:14 24:6,7
40:2 52:2 53:17
**seeing** 38:23
**seek** 11:5
**seen** 51:22
**sees** 43:13
**selection** 26:1 28:13
48:6,9,12 49:5,11
49:23 50:5,16,23
51:1,4,14,18 52:16
56:18
**senate** 2:3
**send** 39:5 40:11
**sending** 39:22
**sensitive** 4:2
**sent** 44:5
**separate** 16:23
17:10

**separately** 17:12
**series** 20:5
**set** 27:11 42:25
55:19 56:3,9
**seventh** 20:25 22:22
**share** 40:16,19,21
43:17
**shared** 45:18,21
46:4,7,9,10,15,17
**shelf** 50:20
**shorthand** 1:15 63:7
**shortly** 24:5
**shot** 36:3 40:9
**shots** 27:10 43:13
44:1,7,8
**show** 19:25 20:1
**sic** 8:9
**side** 44:25
**sign** 63:25 64:5
**signature** 63:21
64:6,10
**signed** 64:3
**signing** 64:2
**simply** 12:1
**single** 31:11
**sir** 23:24 24:19
**sit** 36:22 55:11
59:20
**sitting** 60:1
**situations** 51:22
**six** 47:12,12
**small** 47:15,18,19
**social** 52:8,10,10,12
**software** 36:2,4
40:20 43:14
**solutions** 4:9
**someplace** 24:14
**sops** 26:4
**sorry** 6:10,21 9:10
11:17 28:17 32:24
33:4,5 34:23 35:9
38:6 45:9 46:8
54:21 55:22 58:19
60:11

[sort - training]

| | | | |
|---|---|---|---|
| **sort** 23:21 | 51:4,10,13,18 52:16 | **talked** 18:3 41:4 | 43:3,4 44:15 45:20 |
| **southern** 1:2 4:16 | 56:18 57:2,7 | **talking** 13:23,24 | 46:3,14 47:2,13,20 |
| **speaker** 6:11 | **subjects** 7:6 | 15:11 27:24 37:2 | 49:4,11 50:15 51:13 |
| **specific** 15:11 18:5 | **submitted** 62:14,16 | 38:3 40:23 45:25 | 52:25 55:25 56:6,14 |
| 18:20 20:17 22:16 | **subpoena** 1:12 | 49:22 54:9 55:12 | 57:9,21 58:15 59:21 |
| 22:21 26:7 33:11 | **subsequent** 21:11 | 56:8 | 59:25 |
| 39:10 47:9 50:25 | **substantial** 21:25 | **team** 31:25 | **thinking** 19:9 |
| 51:8,21 59:25 61:11 | **suggest** 17:1 24:22 | **telephonically** 2:2 | **third** 5:25 38:8 |
| **specifically** 10:16 | **suggestions** 38:23 | **tell** 20:10 36:23 | **thought** 33:5 39:6 |
| 18:9 19:9 31:7 | **summaries** 57:13 | 63:14 | 49:23 |
| 32:23 33:6 36:13 | **summarize** 44:18 | **telling** 15:8 25:10 | **thousands** 48:13 |
| 42:17 51:10 55:8 | **summit** 38:18,24 | 42:7 | **three** 5:19 31:8,14 |
| 57:16 59:17 60:20 | **summits** 39:20 | **templates** 46:8 | **time** 4:10,19 10:24 |
| 61:7,13 | **supervision** 37:25 | **ten** 22:25 | 10:24 15:24 16:5 |
| **specifications** 16:17 | 38:4,9 | **tend** 51:20 | 19:18 22:5,6 25:8 |
| **speculate** 56:6 | **supposed** 57:12 | **term** 50:11,15 | 26:15,21 27:4,6 |
| **speculating** 29:15 | **sure** 7:19 11:19 | **terms** 36:5 44:14,16 | 30:5 34:16 35:9,10 |
| **speculation** 55:4 | 12:17,25 13:3,8 | 44:20 56:21 57:4 | 36:23 37:22 45:22 |
| **spoke** 56:10 | 16:11 20:8 24:21 | **testified** 5:6 | 57:25 58:6 61:19 |
| **ss** 63:4 | 26:4 39:12 41:3 | **testimony** 14:4 | 62:12 63:20 |
| **staff** 6:7,19 7:11,17 | 42:1,17 49:10 54:24 | 29:11 32:20 40:5 | **timely** 23:4 |
| 7:21,24 60:19 | 57:23 | 50:8 53:13 55:16 | **times** 43:9,12,19 |
| **stage** 21:24 22:10 | **swear** 5:1 | 62:13 | 52:6 53:6 |
| 23:10,15 | **sworn** 5:3,6 62:10 | **texas** 31:18 | **timing** 41:19 |
| **standard** 59:23 | 63:14 | **text** 44:18 | **title** 21:16 22:4 |
| **standards** 59:10 | **system** 10:1,19 | **thank** 17:2 24:19,20 | 25:25 |
| 60:24 | 13:14 14:7 16:17,19 | 26:13 | **today** 4:9 6:22 7:3 |
| **state** 37:10 63:3 | 16:22 17:7,9,12,13 | **thanks** 24:21 | 7:21,23 20:2 24:8 |
| **states** 1:1,13 4:16 | 17:15 27:10 28:4 | **thereof** 34:15 64:2 | 36:22 55:11 57:1 |
| 63:24 | 34:3,6,9,14,19,22,24 | **thing** 17:10 31:11 | 59:5,20,22 |
| **stay** 24:5 | 34:25 35:4,8 36:1 | 58:14 | **today's** 5:9 61:3 |
| **stenographically** | 43:7,10,22 48:5 | **things** 13:16 14:9 | **told** 20:20 32:14 |
| 63:11 | 51:4 56:17 | 17:8 18:3 43:18 | 33:15 53:4,11 54:5 |
| **steve** 8:24,25 | **systems** 40:18 50:14 | 47:13 56:11 59:7 | 57:1 58:11 59:5 |
| **stockdale** 8:20,22 | | **think** 5:19 6:14 8:13 | **toll** 28:8 |
| **strasburger** 31:17 | **t** | 9:25 11:4,24 12:13 | **topic** 7:9 20:13 |
| **strategies** 33:9,10 | | 17:17,24 18:8 19:7 | **topics** 7:6 |
| 57:5 | **table** 51:24 52:1,2 | 20:11 21:12 23:14 | **totality** 19:11 |
| **strategy** 38:21 39:7 | **take** 10:24 11:5 23:9 | 24:6 25:24 26:11 | **tracy** 1:15 4:25 63:7 |
| **street** 1:16 4:12 | 24:22 26:12 57:22 | 27:25 29:3 30:7,16 | 64:13 |
| **stuck** 24:10 | **taken** 1:14 4:13 22:9 | 32:13,23 33:6,11,17 | **trade** 36:20 37:24 |
| **subject** 16:9 26:1 | 23:20 62:11,12 | 33:22,24 34:1,9,11 | 56:12 |
| 28:13 46:12 48:6,8 | 63:10 | 34:14 36:1 37:19,20 | **train** 27:7 33:5 |
| 48:12 49:5,11,22 | **talk** 21:2 38:21,21 | 38:6,11 39:8,21,23 | **training** 12:15 13:14 |
| 50:5,16,23,23,25 | 38:22 57:10 | 41:2,4 42:2,4,10 | 14:7 16:18,21 17:14 |

Veritext Legal Solutions
866 299-5127

[training - year]

34:18 35:16 39:11
43:15 45:16 56:4
**trans**  1:7 4:11,15,23
6:7,18 7:10,16,23
8:3 9:18,20,21,24
10:9 11:9,16,20
12:9,16,24 13:25
14:10 16:17,18,18
17:20 18:4,12 20:16
22:15 28:19 38:7
40:15 41:9 43:16
44:25 47:3,5 48:4
49:4 50:11,17 51:4
51:18,22 58:16,20
59:15 60:18
**transcript**  62:11,13
64:1,2,5
**transcription**  63:12
**true**  62:12 63:18
**truth**  63:14,14,15
**try**  24:2
**trying**  21:4 45:19
56:13
**turn**  4:4 6:11
**two**  6:5 17:24 25:1
31:7,14,16,21 49:19
51:24 52:3
**type**  47:8
**types**  39:21 41:22
43:11,18 47:15
48:17 52:5,14 56:12
**typewriting**  63:12
**typically**  14:25
36:15 37:8 38:25
39:5

### u

**u**  8:2,9
**u.s.c**  58:18,22
**undersigned**  64:7
**understand**  6:23
13:5 14:22 16:8
22:8 29:8 35:15,16
49:10 50:12

**understanding**  13:7
13:8,11,12 20:3,8
21:6,8,12 22:2
23:16 51:2
**understands**  18:7
53:23
**understood**  24:15
**union**  1:7 4:11,15,24
8:3 9:18,20,21,24
10:9 11:9,20 12:9
12:16,24 13:25
14:10 16:17,18,18
17:20 18:4,12 20:16
38:7 40:15 41:9
43:16 44:25 47:3,6
48:4 50:11,17 51:4
51:22 58:16,20
59:15 60:18
**union's**  6:7,18 7:11
7:16,23 11:16 22:15
28:19 49:5 51:18
**united**  1:1,13 4:16
63:24
**update**  37:5,18 39:4
43:14 44:1 51:2
**updated**  36:2,3,16
36:20,24 37:2,7,14
38:4 43:8,14,18,21
44:9
**updates**  35:12,18
36:2,11 37:21 38:14
38:25 39:1,3,22
43:11 46:24 56:11
**upgrade**  36:5
**use**  10:6 14:10,24
17:25 31:16,25 32:4
43:7,16,16 46:8
47:3 50:11,15 57:14
**users**  44:8
**uses**  12:16
**usually**  31:3

### v

**v**  8:1

**value**  44:20
**various**  24:9
**veritext**  4:9 5:1
**versions**  34:9,11
**versus**  4:15
**vetted**  42:14
**video**  19:24 61:21
**videographer**  2:12
4:1,25 6:11 15:23
16:4 19:17 25:7
26:14,20 57:24 58:5
61:17
**videotaped**  1:10
**view**  12:22 18:9,10
44:15,22 50:18
**virtually**  60:16
**voluminous**  27:11
**vs**  1:6

### w

**w**  8:2,11
**waived**  63:21 64:6
**walk**  25:1
**want**  12:3,4 20:10
25:3,4 27:6 38:17
56:5
**wants**  20:8
**watkins**  1:4 4:14 6:6
6:9,18 7:10 8:4 9:19
9:22 10:9,16 40:25
51:2,9
**way**  15:11 23:12
39:2,3 40:19
**ways**  38:16
**wbrown**  2:9
**we've**  8:21 11:24
31:8,11 37:16,16
39:10,10,19,21
40:20,21 47:16,22
48:22 55:7 59:21
**web**  40:20
**went**  45:7
**west**  1:15 4:12
**whispering**  4:3

**william**  2:7 4:23
20:2
**wilson**  8:10 10:19
**witness**  4:17 5:1,3,5
10:13,15 11:4,16
12:6 13:7,19 14:3,6
14:15,22 15:6 18:6
18:8 19:6 20:18,19
20:20 21:13,21
22:17 27:1,3,17,18
29:11,20,22 31:6
32:19 35:8 36:1
39:19 40:5 41:2,16
42:12 43:25 44:14
45:6 49:4 50:8
53:13,22,24 55:16
55:17 57:9 59:13,25
61:5 63:13,19,21
64:10
**witnesses**  3:1,2
40:13
**word**  19:4 34:12
**wording**  35:14
46:11
**words**  57:3 59:8
**work**  32:7
**worked**  32:7 48:21
**working**  40:12
57:11
**works**  32:8
**write**  40:18
**written**  11:11,16,22
11:24 18:9,10 20:14
36:16 40:1,3 52:13
58:8
**wrote**  28:8

### x

**x**  3:1 21:16

### y

**yeah**  9:11 15:16
24:1 33:1
**year**  38:17 39:23
43:9,12,19 52:6

Veritext Legal Solutions
866 299-5127

[years - zionsville]

| years | 8:17 31:9 33:7 |
|---|---|
| | 40:21 47:5,12,14,15 |
| | 47:17 51:22 52:8 |
| | 56:2 |
| **z** | |
| zionsville | 2:8 |