UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| RICHARD WATKINS, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|      vs. | ) Cause No. 2:14-cv-135-WTL-DKL |
| | ) |
| TRANS UNION, LLC, | ) |
| | ) |
|    Defendant. | ) |

## ENTRY REGARDING ATTORNEY DISQUALIFICATION

The issue before the Court is whether attorney G. John Cento should be disqualified from representing the Plaintiff in this case brought under the Fair Credit Reporting Act ("FCRA") because he previously represented the Defendant, Trans Union LLC, defending it in numerous FCRA cases. The issue has been extensively briefed by the parties, and the Court has held a hearing on the matter. The Court, being duly advised, now finds that Cento is not disqualified from representing the Plaintiff in this case.

### I.  FACTUAL BACKGROUND

Cento was working as an attorney at the law firm of Katz & Korin, P.C., when attorney Robert Schuckit joined the firm in September 2001, bringing Trans Union with him as a client. Cento soon began representing Trans Union, and by 2003 he was working almost exclusively on Trans Union cases. In June 2005, Schuckit left Katz & Korin to form his own law firm, Shuckit & Associates; Cento worked at that firm until July 2005. Between 2001 and 2005, Cento represented Trans Union in some capacity in over 250 cases, filing appearances in over 80 cases, and billing over 4,000 total hours for work for Trans Union. All or virtually all of this work involved cases filed under the FCRA pursuant to which Trans Union, as a credit reporting

agency, is regularly sued. Eventually Cento's work also included supervising other attorneys who represented Trans Union.

Cento's relationship with Trans Union was typical of an attorney who represents a corporate client extensively over a period of years—he worked closely with Trans Union's in-house counsel and other employees on the cases he was involved in, he had full access to whatever information he needed regarding Trans Union's business, and he participated in meetings to discuss things like litigation strategy, trends in litigation, and how Trans Union should address "hot button issues" and new developments in the law. Some of the Trans Union employees he worked with are still with Trans Union; others are not.

Cento has not represented Trans Union since July 2005. Schuckit and his firm still serve as regional counsel for Trans Union.

## II.  PROCEDURAL BACKGROUND

The procedural history of this case is somewhat unusual, and while it is not particularly relevant to the resolution of the issue before the Court, the Court mentions it in order to ensure that there is no confusion with regard to the standard under which the Court is operating.

Trans Union has successfully moved to disqualify Cento in two other cases in which he represented Plaintiffs in suits against it, convincing those courts that Cento's appearance against it in those cases violated his duties to his former client under Indiana Rule of Professional Conduct 1.9. *See Childress v. Trans Union, LLC*, 1:12-cv-184-TWP-DML (S.D. Ind.); and *Hobson v. Trans Union, LLC*, 1:13-cv-54-JD-RBC (N.D. Ind.). Rather than file a motion to disqualify in this case, Trans Union filed a motion seeking an order to show cause why Cento should not be disqualified for the same reasons that he was disqualified in *Childress* and *Hobson*. The district judge previously assigned to this case granted that motion and ordered Cento "to

show cause as to why he should not be disqualified from representing Plaintiff against Defendant pursuant to Indiana Rule of Professional Conduct 1.9 and the rationale set forth in" *Childress* and *Hobson*. Dkt. No. 13. After a contentious and protracted battle over whether and to what extent Cento should be permitted to conduct discovery, Cento responded to the order to show cause and Trans Union filed a reply brief. The matter was then referred to Magistrate Judge Hussmann by the previous district court judge "pursuant to 28 U.S.C. § 636(b)(1)(B) to rule on any related motions and conduct any necessary hearings and issue a report and recommendation regarding Attorney Cento's potential disqualification." Dkt. No. 51.

Shortly after Magistrate Judge Hussmann entered his report and recommendation, this case was reassigned to the undersigned. For reasons explained in a previous entry, Dkt. No. 81, the Court decided to exercise its authority to begin with a clean slate, rather than addressing Trans Union's objections to the Magistrate Judge's report and recommendation. *See Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 760 (7th Cir. 2009) ("[T]he district judge remains the final authority in the case, and he may reconsider *sua sponte* any matter determined by a magistrate judge."); 28 U.S.C. § 636(b)(1)(C) (district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge"). The Court, therefore, will not be addressing the reasoning of Magistrate Judge Hussmann's decision. Nor is the Court bound by the rulings in *Childress* and *Hobson*. *Wirtz v. City of S. Bend*, 669 F.3d 860, 863 (7th Cir. 2012) ("A district court decision does not have precedential effect—that is, it is not an authority, having force independent of its reasoning, and to which therefore a court with a similar case must defer even if it disagrees, unless the circumstances that justify overruling a precedent are present."). Accordingly, to the extent that Trans Union suggests that those decisions should dictate the results of these proceedings, it is incorrect.

### III. APPLICABLE LAW

"What duties lawyers owe their former clients depends on the law of the jurisdiction where the representation occurred. . . . When representing a client in federal court, a lawyer must follow federal rules. Most federal courts use the ethical rules of the states in which they sit, though a few (the Northern District of Illinois being a good example) have elaborate federal rules of practice." *Huusko v. Jenkins*, 556 F.3d 633, 636 (7th Cir. 2009). The Southern District of Indiana's Local Rule 83-5(e) provides that the Indiana Rules of Professional Conduct govern the conduct of attorneys appearing in this district. Accordingly, it is Indiana Rule of Professional Conduct 1.9 ("Rule 1.9") that governs whether Cento may ethically represent Watkins in this case.

Trans Union argues that "federal common law," as set forth by the Seventh Circuit in *LaSalle National Bank v. Lake Co.*, 703 F.2d 252, 255-56 (7th Cir. 1983) and *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266-67 (7th Cir. 1983), is the source of the appropriate test in this case. Indeed, at the hearing on this matter, Trans Union suggested that the law as set forth in those cases is more relevant than Rule 1.9:

> I think what we have to kind of get straight here is: Where do the rules for conflict of interest and substantial relationship—where do those all derive from? It is, on the one hand, Indiana Rule 1.9. But in addition, the courts, in *LaSalle*, and in the other cases we cited, like *Anayltica*, make clear that there is a federal common law that prevails here.
>
> An examination of the *LaSalle* case demonstrates that the court did not use the Illinois Rule 1.9 to decide that case. It relied on the federal common law of the circuit. As a note, I'll throw in the fact that Illinois Rule 1.9 and Indiana Rule 1.9, now they're nearly identical. I couldn't find one from 1985. But we're talking about fundamental principles in the law.

Dkt. No. 115 at 23-24. There is an obvious reason why the Seventh Circuit did not mention Illinois Rule 1.9 in the *LaSalle* decision: The rule did not yet exist. Rule 1.9 is part of the ABA

4

Model Rules of Professional Conduct ("Model Rules") that were adopted in August 1983, after both *LaSalle* and *Analytica* were decided. ABA Commission on Evaluation of Professional Standards, Ann. Mod. Rules Prof. Cond. Commission on Eval. of Prof. Standards (8th Ed. 2015). Illinois did not adopt the Model Rules until 1990, *see Rand v. Monsanto Co.*, 926 F.2d 596, 600 (7th Cir. 1991), and the Northern District of Illinois—the district in which both *LaSalle* and *Analytica* arose—had as late as February 1991 not changed its local rules to "track those of Illinois." *Rand*, 926 F.2d at 600. There was no "Rule 1.9" for the Seventh Circuit to apply at the time it decided *LaSalle* and *Analytica*.

Indeed, at the time the Seventh Circuit decided those cases, there was no applicable rule of professional responsibility that specifically addressed the issue of under what circumstances an attorney may undertake litigation against a former client, which is why it was necessary for the court to look to the common law. The Seventh Circuit noted in *LaSalle* that several years earlier it had adopted the "substantial relationship" test that had been

> developed in *T.C. Theatre Corp. v. Warner Bros. Pictures,* 113 F. Supp. 265 (S.D.N.Y. 1953), to give judicial content to the obligations imposed upon attorneys by the professional canons governing their conduct. The test has been described by this circuit as embodying the substance of Canon 4 of the A.B.A. Code of Professional Responsibility, which protects the confidences of a client against disclosure and possible use against him, and of Canon 9, which provides that an attorney must avoid even the appearance of impropriety.

*LaSalle*, 703 F.2d at 255 (citing *Cannon v. U.S. Acoustics Corp.*, 398 F. Supp. 209, 223 (N.D. Ill. 1975), *aff'd in part and rev'd in part*, 532 F.2d 1118 (1976)). Under that test, "the question before a district court considering a motion for disqualification is whether it could reasonably be said that during the former representation the attorney might have acquired information related to the subject matter of the subsequent representation." *Id.* at 255 (citation omitted). The Seventh Circuit

> direct[ed] that a three-level inquiry be undertaken in order to determine if such a substantial relationship exists. First, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Third, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client.

*Id.* at 255-56 (citations omitted).

The ABA Code of Professional Responsibility ("Model Code"), on which the substantial relationship test set forth in *LaSalle* was based, was replaced by the Model Rules, which, in Rule 1.9(a), codified the substantial relationship test as follows:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

However, different courts had applied the common law substantial relationship test in different ways. *See, e.g.*, *Koch v. Koch Indus.*, 798 F. Supp. 1525, 1533 (D. Kan. 1992) (noting "two distinct versions of the 'substantially related' test"). By adopting the Model Rules and its comments, Indiana, and by extension this district, has adopted a particular interpretation of the substantial relationship test in Rule 1.9. It is that interpretation that controls in this case, inasmuch as that is the rule that this district has expressly adopted.[1] Part of that interpretation is a rejection of Canon 9 of the Model Code's appearance of impropriety standard as relevant to the issue of disqualification, a standard that explicitly factored into the substantial relationship test as adopted by the Seventh Circuit. *See Waters v. Kemp*, 845 F.2d 260, 265 (11th Cir. 1988) (noting

---

[1]Trans Union's argument that it is the Seventh Circuit's substantial relationship test as set forth in *LaSalle* that controls is understandable, in light of the fact that numerous district courts—including the courts in *Childress* and *Hobson*—have so stated. Indeed, as Trans Union points out, the undersigned previously has cited that rule in deciding a motion to disqualify. On that occasion, the decision did not depend upon the precise contours of the rule, so there was no need for the Court to examine them.

that the Model Rules replaced the Model Code and "[u]nder the Model Rules, the appearance of impropriety is not a ground for disqualifying a lawyer from representing a party to a lawsuit").

Trans Union urges a particular reading of the Seventh Circuit's general language regarding the common law substantial relationship test, but to the extent that that reading is inconsistent with the more specific guidance provided in the comments to Rule 1.9, the Court believes it is appropriate to utilize that guidance in applying the Rule. *See, e.g.*, *United States v. Williams*, 698 F.3d 374, 386 (7th Cir. 2012) (noting that applicable commentary to rules of professional conduct "provide valuable guidance"); *Weibrecht v. Southern Ill. Transfer, Inc.,* 241 F.3d 875 (7th Cir. 2001) (finding district court within its discretion in applying test found in comment to Model Rule 4.2 instead of Illinois appellate court holding decided under previous version of rules).

## IV.  DISCUSSION

Like the Model Rule, Indiana Rule of Professional Conduct 1.9(a) provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Cento, as counsel for Trans Union from 2001-2005, represented Trans Union in over two hundred cases. Watkins' claim against Trans Union does not involve the "same transaction or legal dispute" as any of the cases Cento handled for Trans Union, but it does involve the same type of alleged violation of the FCRA as some of those matters did. That, by itself, clearly is not sufficient to disqualify Cento from this case, however. Rule 1.9 is explicitly concerned with matters that are *factually* related, not cases that simply involve the same legal issues:

> The scope of a "matter" for purposes of this Rule depends on *the facts of a particular situation or transaction*. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific

7

> transaction, subsequent representation of other clients with materially adverse interests in that transaction clearly is prohibited. *On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client. . . .* The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

Comment 2 to Rule 1.9 (emphasis added).

Watkins' claim against Trans Union clearly is not the same "matter" as any of the matters in which Cento represented Trans Union. The question, then, is whether it is "substantially related" to any of those matters as that phrase is used in Rule 1.9. "Substantially related" is not defined in the rule itself, but Comment 3 to the rule gives the following guidance:

> Matters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter. For example, a lawyer who has represented a businessperson and learned extensive private financial information about that person may not then represent that person's spouse in seeking a divorce. Similarly, a lawyer who has previously represented a client in securing environmental permits to build a shopping center would be precluded from representing neighbors seeking to oppose rezoning of the property on the basis of environmental considerations; however, the lawyer would not be precluded, on the grounds of substantial relationship, from defending a tenant of the completed shopping center in resisting eviction for nonpayment of rent. Information that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying. Information acquired in a prior representation may have been rendered obsolete by the passage of time, a circumstance that may be relevant in determining whether two representations are substantially related. In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation. A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.

The question, then, is not whether Cento gained general knowledge about what Trans Union's policies and practices were in 2001-2005 during his course of representing it—clearly, he did. Cento argues—and Trans Union does not dispute—that those general practices and procedures are discoverable by opposing counsel if they are relevant to the alleged FCRA error in a given case. To the extent that is the case, those practices and procedures are not the type of confidential information that would disqualify Cento.

Trans Union, through the testimony of its general counsel, Denise Norgle, explained that Cento had access to information that was considered "confidential or proprietary" by Trans Union, information which "in the hands of a fraudster or in the hands of a competitor, could be very damaging to Trans Union," the "secret sauce that differentiates us from our competitors." But, again, to the extent that that type of information is relevant to a given plaintiff's case, it would be discoverable, subject to a protective order to keep it from being revealed to fraudsters or Trans Union's competitors. To the extent that it would not be relevant to other plaintiffs' cases, it would not be relevant to Watkins' case, either.

Of course, Cento undoubtedly did learn some truly confidential information about Trans Union during the four years he represented it. Given the passage of time, however—eleven years at this point—the Court finds there is not a substantial risk that that confidential factual information would materially advance Watkins' position in this case. Trans Union's witnesses pointed to discussions Watkins was privy to regarding "hot button issues" and topics like "there's a new bill coming down and how do you think it will affect litigation trends, and how do you think we should change our policies and procedures if this bill passes and becomes law." This type of confidential information about Trans Union certainly might have disqualified Cento from representing plaintiffs suing Trans Union for a period of time. There is a substantial risk

9

that knowledge of a former client's concerns about and/or strategies for addressing new or emerging legal issues would, in the short term, materially advance the case of a plaintiff suing that client in cases in which those same issues were being addressed. After eleven years, however, those strategies would have been implemented and tested as the legal issues were litigated. That is the nature of the law—issues and the strategies used to address them evolve over time. A strategy is only confidential until it is employed in litigation, and a strategy is only viable to the extent that it takes into account all of the relevant case law[2] and other circumstances. The fact that Trans Union had regular meetings with its outside counsel to discuss issues and strategies demonstrates this reality. Thus, while Trans Union makes much of the fact that Schuckit & Associates has remained its outside counsel since 2005 and some of the Trans Union employees responsible for litigation strategy are the same today as when Cento represented Trans Union, the matters that those individuals handle now are simply not substantially related to the matters they (and Cento) handled during Cento's tenure. Nor is it reasonable to believe that the manner in which they have handled things has remained static.

Trans Union notes that Cento touts his experience representing credit reporting agencies on his website and argues:

> Cento simply would not include his prior experience defending Trans Union in FCRA litigation as a "sales pitch" on his website to potential plaintiffs if it were not useful in future litigation. The length, depth, breadth and singular focus of Cento's defense of Trans Union in reasonable procedure and reinvestigation cases mandates his disqualification, notwithstanding the passage of time, and the statements on Cento's website concede as much.

---

[2]The Court notes that a Westlaw search reveals almost 500 cases that have been decided since the beginning of 2006 that cite to 15 U.S.C. § 1681e, which is just one of several provisions of the FCRA that Watkins alleges Trans Union violated.

Dkt. No. 109 at 17.  Of course Cento's past experience representing Trans Union is useful to him in current litigation.  The experience Cento gained in litigating FCRA cases will indisputably benefit his current and future clients—whether they are suing Trans Union or another credit reporting agency or some other type of defendant altogether.  That is not the standard for disqualification, however.  The question is not whether Cento gained experience and skills from his representation of Trans Union that will benefit Watkins, but whether he learned confidential factual information that is material to Watkins' case.

Trans Union cites several cases in support of its argument that the passage of eleven years does not render any confidential information obtained by Cento obsolete.  For example, Trans Union notes that an attorney was disqualified twenty years after his previous representation had ended in *USI Ins. Servs., LLC v. Ryan*, 2014 WL 3054278 (N.D. Ind. 2014).  In that case, however, the law firm at issue had drafted the very employment agreement that was being challenged in the current case.  Therefore it was not an instance of the subject matter of the two cases being similar; instead, they were "'in important respects identical.'" *Id.* (quoting *HealthNet, Inc. v. Health Net, Inc.*, 289 F. Supp. 2d 755, 756 (S.D. W. Va. 2003)).  Similarly, in *HealthNet*, the lawyer in question had written an opinion letter for his former client regarding the same trademark that was at issue in the current case.  So, too, in *EON Corp. IP Holdings LLC v. Flo TV Inc.*, 2012 WL 4364244 (D. Del. 2012), also cited by Trans Union, the court held that "it makes no difference that seventeen years have passed since Latham represented EON, when the lawsuit will in part concern events that occurred twenty years ago."  None of these cases stand for the proposition that general strategic knowledge from a decade ago—as opposed to specific factual knowledge that is directly relevant to the current case—is sufficient to require disqualification under Rule 1.9.

As Trans Union's counsel aptly stated at the hearing in this matter, "[s]trategy is not about a recipe in a cookbook. It's about the infinite number of decisions that you make every day as to what your next move is going to be, what you're going to ask at a deposition, what witnesses you're going to put on at trial . . . ." Dkt. No. 115 at 23. The fact that all of those decisions are made in individual cases based upon all of the relevant factors in play at that particular moment in time means that it would be sheer folly for Cento to assume that Trans Union's position on an issue is the same today as it was eleven years ago, just as it would be sheer folly for a lawyer who was adverse to Trans Union eleven years ago to assume that Trans Union would litigate a case the same way today. Given the lack of factual overlap between the cases litigated by Cento on behalf of Trans Union and the passage of time that has rendered any confidential strategic or general knowledge acquired by Cento during his representation of Trans Union obsolete, the Court finds that Cento may represent Watkins in this case.

SO ORDERED: 9/15/16

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification