UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

---

RICHARD WATKINS,
    Plaintiff,

vs.

TRANS UNION, LLC,
    Defendant.

CASE NO. 2:14-cv-00135-WTL-MJD

Judge William T. Lawrence
Magistrate Judge Mark J. Dinsmore

---

**EXCERPTS OF CONFIDENTIAL TRANSCRIPT
OF MARCH 22, 2018 DEPOSITION OF LYNN PRINDES**

---

Respectfully submitted,

*s/ Justin T. Walton*
William R. Brown, Esq. (#26782-48)
Camille R. Nicodemus, Esq. (#24528-49)
Justin T. Walton, Esq. (#29540-49)
Schuckit & Associates, P.C.
4545 Northwestern Drive
Zionsville, IN  46077
Telephone:  317-363-2400
Fax:  317-363-2257
E-Mail:  wbrown@schuckitlaw.com
         cnicodemus@schuckitlaw.com
         jwalton@schuckitlaw.com

*Counsel for Trans Union, LLC*

```
 1   SSN ordering rule, but that SSN --
 2   BY MR. CENTO:
 3       Q.   Right.
 4       A.   -- would have never been in that
 5   situation in the first place had that SSN initially
 6   been reported with the trade line.  If that SSN --
 7       Q.   Fair enough.
 8       A.   -- was initially reported, we wouldn't
 9   even be -- that SSN would never have been on son's
10   file.
11       Q.   Sure, sure.  And again, I'm going to
12   ask you about that.
13            But sticking with this -- unless,
14   does it make sense to you -- would this
15   conversation go better if we talked about that part
16   first?
17       A.   It's usually best to explain things in
18   a chronological order.
19       Q.   From the beginning, okay.  So then
20   let's pause on this conversation.  Let's go back.
21            The very first thing that -- if we
22   had to list chain of causes, right, that the things
23   that caused the plaintiff's credit file to
24   ultimately contain 23 collection accounts that did
25   not belong to him, the first thing in that chain of
```



```
 1   causes would be that U.S. Bank reported an account,
 2   a trade line, with a blank Social Security number
 3   field, right?
 4           MR. BROWN:  Object to form.
 5           THE WITNESS:  Yes, that is true.
 6   BY MR. CENTO:
 7       Q.     Okay.  First question is:  How do you
 8   know that?
 9       A.     I was able to determine that based on
10   source data for that account when it was first
11   added to the son's file.
12       Q.     Source data you said?
13       A.     Yes.
14       Q.     Did you produce that source data?
15       A.     It was part of my investigation.
16       Q.     Did you produce it?
17       A.     No, I don't think so.
18           MR. CENTO:  Off the record for a second.
19                   (Discussion off the record.)
20           MR. CENTO:  Let's go back on the record.
21   BY MR. CENTO:
22       Q.     I just had an off-the-record
23   conversation with your attorney in which he tells
24   me that you did not keep that source data; is that
25   true?
```



Case 2:14-cv-00135-WTL-MJD   Document 192   Filed 05/01/18   Page 4 of 11 PageID #: 6480

116

Lynn Prindes
March 21, 2018

Attorneys Eyes Only

116

```
 1   difference to your decision?  The witness is not
 2   making any decisions.  She's describing a decision
 3   that's made by the system.
 4   BY MR. CENTO:
 5        Q.   Go ahead.
 6        A.   No, it wouldn't make any difference
 7   because the system is programmed to just look at
 8   the characters in the field.  And in this case,
 9   it's determining that there's an exact match to
10   file 2's middle name versus a partial match to
11   file 1's middle name.
12        Q.   In this response, you -- in this --
13   under No. 2 here where we have the son's indicative
14   information, where did you get that indicative
15   information?  How do you know about what was on his
16   file on March 1, 2009?
17        MR. BROWN:  Object to form.
18        THE WITNESS:  I believe I obtained this
19   information from looking at an archive of a
20   database.
21   BY MR. CENTO:
22        Q.   You looked at an archive of a database.
23   What does that mean?
24        A.   It's a version of the database from a
25   previous point in time.  In this case, the time was
```



1   5145 was first reported to TransUnion.

2       Q.   And you learned that from the research
3   that you did before that we don't have a printout
4   of right now, right?

5       A.   Yes.

6       Q.   Did you pick that date because whatever
7   matching is going to be done, whatever subject
8   selection rules are going to be applied to that
9   trade line are applied on the date that it's
10  received?

11      A.   Yes.

12      Q.   Did you produce the archived version of
13  this second credit file for the son?

14      MR. BROWN:   Object to form.

15      THE WITNESS:   No.

16  BY MR. CENTO:

17      Q.   Can you still get it?

18      A.   Yes.

19      Q.   Do you have it somewhere?  Would you
20  print it?

21      A.   I might have while I was doing the
22  research.  I can't remember because I had done this
23  so long ago.

24      Q.   When did you do this research that
25  we've been talking about?



```
 1         A.    I don't remember, but I think it could

 2   be a couple years ago maybe.  I can't remember

 3   exactly.

 4         Q.    Around the time the case was filed?

 5         MR. BROWN:  Object to form.

 6         THE WITNESS:  I don't remember the date.

 7   BY MR. CENTO:

 8         Q.    Do you have anything in your office

 9   that would tell you what -- when you did that

10   research?

11         A.    It would likely be correspondence I had

12   with our attorneys.

13         Q.    Do you know what trade lines,

14   collection accounts, or judgments were on the son's

15   file on March 1, 2009?

16         A.    No.

17         Q.    Would this archived version of the file

18   tell us that?

19         A.    To a certain extent, yes.

20         Q.    Why do you qualify it?

21         A.    Because it's not the actual credit

22   file.  It's just an audit and administrative copy

23   of our database, which isn't exactly the consumer's

24   credit file.

25         Q.    Would I -- but would it tell us how
```



124

```
 1            THE WITNESS:  It wasn't asked for.
 2   BY MR. CENTO:
 3       Q.    Well -- it wasn't asked for.
 4             Let's go back up to page 2.  I want
 5   you to look at interrogatory No. 3.
 6       A.    Okay, I'm there.
 7       Q.    By the way, are you having any trouble
 8   reading this iPad?  Reading this document?
 9       A.    No.
10       Q.    Interrogatory No. 3(b)(ii) asks
11   TransUnion to identify all information you need or
12   on what you relied to determine the plaintiff had a
13   mixed file, right?
14       A.    Yes.
15       Q.    That would include those files as they
16   existed -- both of those two files as they existed
17   on March 1, 2009, and August 12, 2012, right?
18       MR. BROWN:  Object to form.
19       THE WITNESS:  No, not necessarily.
20   BY MR. CENTO:
21       Q.    Well, then why did you look at them?
22       A.    I look at a lot of information when I'm
23   doing my analysis to try to piece the whole puzzle
24   together.
25       Q.    Yeah.  You wanted to see, for example,
```



125

1  what indicative information was on the son's file

2  and what indicative information was on the

3  plaintiff's file on March 1st, right?

4       MR. BROWN:  Object to form.

5       THE WITNESS:  That was something I looked at,

6  but that wasn't what I needed to determine the

7  plaintiff had a mixed file because the plaintiff's

8  file wasn't mixed on March 1st.

9  BY MR. CENTO:

10      Q.   Well, then why are you telling me in

11 your answer anything about March 1st?

12      MR. BROWN:  Object to form.

13 BY MR. CENTO:

14      Q.   You told me -- we agreed earlier that

15 one of the contributing factors is what happened on

16 March 1st, right?

17      MR. BROWN:  Object to form, argumentative.

18      THE WITNESS:  Yes.

19 BY MR. CENTO:

20      Q.   Okay.  And if this is a contributing

21 factor to what ultimately caused the mixed file,

22 you needed those documents, those credit files

23 pulled from the archives to determine what you are

24 discussing here in this answer on page 4 where you

25 lay out the indicative information for both of



Case 2:14-cv-00135-WTL-MJD   Document 192   Filed 05/01/18   Page 9 of 11 PageID #: 6485

126

Lynn Prindes
March 21, 2018

Attorneys Eyes Only

126

```
 1   these individuals, right?
 2       A.   No, that's not exactly true.  I did not
 3   need to see that to determine that the plaintiff
 4   had a mixed file.
 5       Q.   Then why is it included in this answer?
 6       A.   It was needed to explain events that
 7   led up to other events that contributed prior to
 8   the file being mixed, but I did not need to look at
 9   those copies of the file to determine that the
10   plaintiff had a mixed file.
11       Q.   Question -- interrogatory No. 3(b)(iv),
12   Roman numeral 4, it says, Please describe how or
13   why plaintiff's file was mixed, right?
14       A.   Yes.
15       Q.   In order to answer that question, you
16   need -- you needed to know the indicative
17   information that existed on both files on March 1,
18   2009, right?
19       A.   Yes.  I needed the information for
20   March 9th to figure out how we got to February 22,
21   2013.
22       Q.   Okay.  Well, then how can you tell me
23   that this question does not ask for that
24   information --
25       MR. BROWN:  Object to form.
```



```
                                                              127
 1   BY MR. CENTO:

 2       Q.     -- within those documents?

 3       MR. BROWN:  Mischaracterizes the witness'

 4   testimony.

 5       THE WITNESS:  Interrogatory 3(b)(ii) says the

 6   information you need to rely on to determine the

 7   plaintiff had a mixed file.

 8              To determine that the plaintiff had

 9   a mixed file, you can see that after the file mixed.

10   BY MR. CENTO:

11       Q.     And (b)(iv), how do you determine

12   (b)(iv)?  How do you answer (b)(iv)?

13       A.     (b)(iv) is a different question which

14   says, Please describe how or why the plaintiff's

15   credit file was mixed with the person or persons

16   identified above.

17              To describe --

18       Q.     Right.

19       A.     -- the how or why --

20       Q.     How do you do that?

21       A.     I'm sorry.  I was still talking.

22              To describe the how or why --

23       Q.     Go ahead.

24       A.     I'm sorry.  I'll let you finish.

25       Q.     How do you do it?  To describe the how
```



```
                                                              128
 1   or why what?
 2         MR. BROWN:  Object to form.
 3         THE WITNESS:  Okay.  Let me finish now.
 4               I would do it by describing the how
 5   and why by looking at all the events that led up to
 6   that point.  However, I did not need the
 7   information on March 1st to determine that the
 8   plaintiff had a mixed file.
 9   BY MR. CENTO:
10       Q.   But you needed the information in order
11   to explain the how and why, right?
12       A.   Yes, to explain how it happened, but I
13   did not need the information to determine that he
14   had a mixed file.
15       Q.   Right.
16               You told me that this -- that you
17   weren't asked to produce the archived files that
18   you looked at.
19         MR. BROWN:  Object to form.
20   BY MR. CENTO:
21       Q.   I asked you --
22         MR. BROWN:  I'm also going to instruct --
23   BY MR. CENTO:
24       Q.   I asked you why --
25         MR. BROWN:  -- the witness not to answer any
```

